Cleo GREGORY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16958.

United States Court of Appeals Fifth Circuit.

March 5, 1958.

Cleo Gregory, in pro. per.

James W. Dorsey, U. S. Atty., J. Robert Sparks, Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

PER CURIAM.

The first appeal of this case was from an order of the district court denying without a hearing a motion to vacate and set aside a sentence of life imprisonment.

This court at first dismissed the appeal [1] on the ground that the appeal was not timely because taken many months after the motion had been denied. Thereafter the Supreme Court, without opinion or otherwise stating its reasons for doing so,[2] vacated our judgment of dismissal and remanded the cause to the court for consideration on the merits, and this court, citing the cases in support held [3] that movant should have been given an opportunity to be heard upon and to testify to the truth of the matters alleged in his motion.

This appeal is from a judgment and order [4] finding and holding that no case

---

1. Cleo Gregory v. United States, 5 Cir., 219 F.2d 809.

2. Cleo Gregory v. United States, 350 U.S. 808, 76 S.Ct. 89, 100 L.Ed. 725.

3. Cleo Gregory v. United States, 5 Cir., 233 F.2d 907.

4. "Order on Defendant's Motion to Vacate Sentence and Judgment

"This motion to vacate was filed, rule nisi issued, and a response filed to the same by the United States Attorney. Being of the opinion that the motion

when considered with the record, did not authorize relief by the Court, this Court dismissed the same without a hearing. On appeal this Court was reversed by the Fifth Circuit Court of Appeals. Thereafter the matter came on before this Court for a plenary hearing on August 2, 1957. While the motion to vacate contains a number of grounds, two grounds insisted upon principally concern certain interviews which were had with the prisoner at the Federal Penitentiary following the alleged homicide and prior

was made out and, therefore, denying the motion. It was entered after a full hearing, the stenographic record containing 200 pages of testimony.

to his arraignment. Also, matters concerning counsel appointed for the prisoner and his alleged inability to contact his family and to procure counsel for himself. After a full hearing this Court is convinced that none of the grounds set forth in the motion are sustained by the evidence, but does agree with movant's counsel (also appointed by the Court) that the two grounds there insisted upon have more of a semblance of merit than do other grounds.

"(1) Ground Four alleges the prisoner was questioned by various officials, and Ground Five alleges that a statement was made during this period in disregard of his constitutional rights, and used at his trial.

"The evidence on this hearing shows without dispute that movant stabbed a fellow prisoner by the name of Douglas, with a screwdriver on Dec. 18, 1952, in the textile mill of the Atlanta Federal Penitentiary. Mr. Treadwell, an F.B.I. agent, was called by Mr. Hiatt, then Warden, and came to the Penitentiary at 10:30 A.M., and he went to the hospital where Douglas was being treated. On Dec. 21st Douglas died. On Dec. 22nd movant was brought into the office of Mr. Gough, Deputy Warden, and was informed that Douglas had died. Movant became hysterical. He admits that he was homosexual and there is no doubt as to his emotional instability. He was advised of his constitutional rights. On Dec. 23rd Agent Treadwell again saw the defendant, expressed his desire for court-appointed counsel, but did not make a request to contact his family. While the evidence shows he did not contact his family, or any outside person in writing, between this date and the date of his arraignment, evidence also shows no attempt by him to mail any matter from the Penitentiary. Counsel was appointed for the prisoner as hereinafter shown, on the date of his arraignment and this was twelve. days prior to the date of trial. At this hearing he does not purport to give the name of any other counsel that he desired to contact. As to his family he testified on the trial he did not know who his father was, and he had only one relative, a half-brother. On this hearing he testified that he has had no contact with any member of his family from the date of the alleged killing to the present date, more than four years. The matter of his attorneys will be discussed, later, but just here is discused whether or not he made any con-

fessions or admissions before he obtained counsel, which were used on the trial.

"No confession was taken from the prisoner and used on the trial (Mr. Gough testified as to exculpatory statements made by movant, consistent with the latter's testimony on the trial). His only complaint, however, is that before any arraignment and before obtaining counsel, the authorities at the Penitentiary induced the prisoner to obtain and display to them the screwdriver which he admittedly used in the killing. There is evidence that the movant did not produce this screwdriver, but gave the name of another prisoner who did produce the same. However, his case was not prejudiced by the discovery of the screwdriver, which apparently was being procured by the prison authorities to be inspected by the physician who was treating Douglas, to enable them to better understand Douglas' condition, and the movant herein was so advised.

"The screwdriver was not obtained from the prisoner in violation of the latter's rights, and his able counsel have explained why they made no motion to suppress it as evidence, to-wit:

"The prisoner has at all times admitted, and swore under oath upon his trial, that he did stab the deceased with the screwdriver in question. Defendant swore that he went into the quilling room where Douglas was working, taking with him the screwdriver admittedly in violation of prison rules. He swore: 'I had the screwdriver when I went up there the first time.' He had gotten the screwdriver out of a mechanic's kit. On the trial he plead self defense, and did not deny the stabbing, and so his counsel very wisely did not raise any false issue. As they testified on this hearing, 'We were trying to save his life.'

"(2) Ground eight contends that the court-appointed lawyers refused to appeal his case, and the Court never advised applicant of his right to appeal. See De Maurez v. Swope, 9 Cir., 104 F.2d 758. The two court-appointed counsel for this prisoner explain fully why they did not advise an appeal, stating that they would not under any circumstances have advised the same, and as a matter of fact, would not have appealed unless expressly ordered to do so by the Court. They felt that the prisoner was very fortunate indeed in escaping electrocution, and they testified that he himself was well-satisfied at the time with the verdict of the jury. As a

Appealing from the order, appellant is here presenting nine specifications[5] which, where relevant and intelligible, in effect complain of the verdict of the jury as contrary to the law and the evidence and of his not being allowed on the hearing of the motion to retry the case.

The United States, with commendable fairness and thoroughness, recognizing the difficulties under which appellant labors in presenting and arguing his appeal, has in its brief set out fully and as fully canvassed each of the specifications. Devoting a large part of its brief to setting out and discussing the

matter of fact, when sentenced by the Court the prisoner made the following statement:

" 'Well, I will say this much that I have in my heart, that I had every opportunity of the Court that they gave me a fair trial, and that I thank my counsel for working for them because if it wasn't for them I wouldn't be a free man, and you gave me every opportunity that was, and I don't have no malice, nor animosity in my heart against nobody.'

"(3) The court having appointed able counsel to represent the defendant (Counsel on the hearing recited their experience. Their conduct of the case shows their ability, of which this court has knowledge), he having accepted their services, he having expressed satisfaction with their services at the time of sentence, and the entire record in this case showing that court-appointed counsel tried his case with skill and ability, and reduced his punishment from electrocution to life imprisonment, movant has no grounds for complaint. Even were it found to be true that he tried to contact outside counsel and was denied that privilege, it is doubtful if that fact would now be material, as he never advised this court of such claim, but on the other hand accepted the services of court-appointed counsel. As pointed out above, however, he does not name any other counsel whom he desired to employ, nor does he show any efforts to contact any members of his family, and this ground is without merit.

"(4) This is a motion to vacate and not an appeal, and consequently the merits of the case are not involved. However, ☀ complete reading of all of the evidence in the case, including movant's own testimony, will disclose that his guilt was established beyond any question, and that he had good reason to express satisfaction when sentenced for life, at the leniency he was receiving. It is understandable that a man serving a life sentence would desire his freedom, and that the life sentence, although welcome when received, may now become a burden. As so frequently happens, the prisoner made no complaint until carried to Alcatraz, and at great expense to the Government

had to be brought back to Atlanta for this hearing. As a prisoner can allege anything he wishes in such motions, a difficult, practical problem is raised. In this case, however, the prisoner was brought back to Atlanta and given a full hearing, but this court is of the opinion there was no constitutional, or legal, right of the prison which was violated at any time.

"Motion to vacate is overruled and denied."

5. (1) Whether the Trial Court committed reversible error when it denied appellant a hearing on the factual issues of a fundamental nature, pursuant to Title 28 U.S.C. § 2255.

(2) Whether the trial court committed reversible error in holding that contact with appellant's friends and relatives and an attorney was not an important matter in defense of appellant's rights.

(3) Whether the trial court committed reversible error in holding Associate Warden Thomas Gough's affidavit contradicting appellant's testimony "to be false".

(4) Whether the trial court committed reversible error when ruling that it was unimportant that appellant was not taken before a U.S. Commissioner.

(5) Whether the trial court committed reversible error in seating Special Agent George Treadwell before the trial Court "to act in the place of the prosecutor, plus a Government witness".

(6) Whether the trial court committed reversible error in upholding Federal Agent Treadwell in the crime of criminal contempt.

(7) Whether the Trial Court committed reversible error when allowing testimony of Government witness George W. Byers after Byers was influenced by "Acting U.S. Prosecutor, F.B.I. Investigator and Government Witness George Treadwell".

(8) Whether the trial court has burdened appellant with a sentence contrary to the law and evidence.

(9) Whether the trial court was prejudiced against petitioner "when active upon using personality."

evidence and the record made below, it urges upon us that these convincingly show that the district judge gave fair and full consideration to appellant's claims and in his judgment and order fairly and correctly disposed of them.

A careful examination of the conclusions and order in the light of the record made in this proceeding and that made on the original trial of the case, both of which records are by agreement before us, and of the briefs, convinces us that this is so.

Without therefore setting out any of the evidence or further discussing it or the contentions made, it is sufficient to say: that we are of the clear opinion that the district judge, in a full and fair hearing, gave fair and full consideration to plaintiff's claims and in his order correctly disposed of the motion; and that his judgment should be Affirmed.