**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Cleo GREGORY, Defendant-Appellant.**

**No. 71-2793.**

United States Court of Appeals,
Fifth Circuit.

Jan. 2, 1973.

James C. Bonner, Jr., Decatur, Ga. (Court Appointed), for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., E. Ray Taylor, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, THORNBERRY and GODBOLD, Circuit Judges.

WISDOM, Circuit Judge:

Cleo Gregory was convicted in 1953 of second degree murder on a federal reser-vation and sentenced to life imprisonment. 18 U.S.C. § 1111. He allowed the time for a direct appeal to lapse, allegedly because he had not been informed by his court-appointed attorneys of his right to appeal. In 1953 he filed a § 2255 petition to vacate his sentence and judgment. The district court denied the petition without a hearing, and this Court dismissed an appeal from the district court's denial as not timely filed.[1] The Supreme Court vacated and remanded for consideration on the merits,[2] and this Court then ordered a hearing.[3] Following a hearing, the district court again denied the motion and this Court affirmed.[4] In 1969 Gregory filed another § 2255 petition, contending that he had been unconstitutionally deprived of his right to appeal. The district court denied the petition, but this Court reversed and remanded with directions to the district court to reimpose sentence so that Gregory could institute a direct out-of-time appeal.[5] After this tortuous litigation and lengthy incarceration Gregory then brought his direct appeal. Belatedly, we reverse his conviction and remand the case for a new trial.

\* \* \*

The killing for which Gregory was convicted occurred while he was serving a sentence for larceny in the federal penitentiary at Atlanta. While there he formed a homosexual liaison with a fellow inmate, John Douglas, who like Gregory worked in the prison textile mill. In time their relationship became strained. On the morning of December 18, 1952, the two had a heated conversation in the textile mill. Gregory struck Douglas a glancing blow as other inmates pulled them apart. Gregory then left, but returned five to ten minutes later and again approached Douglas. The tes-

1. Gregory v. United States, 5 Cir. 1955, 219 F.2d 809.

2. Gregory v. United States, 1955, 350 U.S. 808, 76 S.Ct. 89, 100 L.Ed. 725.

3. Gregory v. United States, 5 Cir. 1956, 233 F.2d 907.

4. Gregory v. United States, 5 Cir. 1958, 252 F.2d 395.

5. Gregory v. United States, 5 Cir. 1971, 446 F.2d 498.

timony is not clear as to whether Gregory was carrying a screwdriver but, in any event, Douglas retreated to his tool box, which was on a shelf, reached up and took some instrument from it. Gregory retreated. Douglas caught up with him and a fight ensued, during which a screwdriver pierced Douglas's chest. Douglas died several days later.

Gregory was significantly shorter than Douglas. Douglas was a convicted murderer. Gregory had a relatively minor record. There was testimony that Douglas had threatened the appellant in the past and had kept a weapon " . . . to keep him in line."

On this appeal Gregory contends that his conviction must be reversed on the grounds that (1) the transcript of his trial is incomplete; (2) a record of a statement made by a witness, Alvin Abbott, at a coroner's inquest was improperly admitted into evidence; (3) the evidence was insufficient to support a conviction of murder; (4) prison officials intimidated witnesses; (5) the trial court erred in its instructions to the jury. In determining that a new trial is required we reach only the first two contentions.

### I.

The trial transcript in this case is incomplete in several important particulars. Initially the trial transcript lacked the trial court's charge to the jury. The government has since supplied a transcript of that charge. But the transcript still contains no record of the voir dire proceedings or the opening and closing statements of counsel. The court-appointed attorney on this appeal did not represent Gregory at the trial. Gregory's attorney therefore must rely entirely on the transcript in attempting to discover errors which may have been committed at the trial.

In Hardy v. United States, 1964, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331, the Supreme Court held that, where new counsel represented an indigent defendant on appeal, counsel must be furnished with a complete transcript of the trial. The Court stressed that the duty of representation of an appellate lawyer included the duty to search out plain error, and that nothing less than a complete transcript would suffice to accomplish this.

Following *Hardy*, this Court has reversed convictions in several cases where there were omissions in the transcripts and where the appellants had new counsel on appeal. In United States v. Rosa, 5 Cir. 1970, 434 F.2d 964, and Atilus v. United States, 5 Cir. 1970, 425 F.2d 816, there were no records whatever of the trial proceedings. In United States v. Garcia-Bonifascio, 5 Cir. 1971, 443 F.2d 914, the transcript omitted the government's closing argument, to which the defendant had objected at the trial. And in United States v. Upshaw, 5 Cir. 1971, 448 F.2d 1218, the sole omission in the transcript was of the closing arguments of defense counsel. There three co-defendants had been tried together. There was no showing that objections to any of the statements had been made at the trial. But on appeal counsel for one of the defendants raised the possibility that trial counsel for the other defendants might have made prejudicial statements in the course of their closing arguments. This Court reversed, stating that to affirm a conviction in such circumstances "the court must be able to say affirmatively that no substantial rights of the appellant were adversely affected by the omissions from the transcript; that is, it must exclude the possibility of any error other than harmless error." 448 F.2d at 1224.

We are unable to state affirmatively that no error other than harmless error was committed in this case. Lacking a transcript of the voir dire proceedings and the opening and closing statements, we cannot determine whether any objections during these proceedings may have been made by Gregory's lawyers. Nor are we able to exclude the possibility of plain error.

The government might, of course, be able to supply the missing portions of the

transcript. But this would be futile in the present case, since for other reasons we find that a new trial is required in any event.

## II.

At the trial the government called Alvin Abbott as a witness. Abbott was an inmate at the Atlanta federal penitentiary who, like Gregory and Douglas, worked in the prison textile mill. He had witnessed the altercation and fight between Gregory and Douglas.

Abbott testified on direct examination that he had seen Gregory and Douglas talking the day before the fight, but that he had been unable to determine what they said and had seen no gestures or blows. He stated that he had seen Gregory approach Douglas again on the day of the fight and that he had separated them when it appeared that they were going to fight. He said that he had seen Gregory leave and return in ten minutes. According to his testimony Gregory approached Douglas, said something, and then retreated. Douglas reached up on his machine and "got something", caught up with Gregory, and the two began to fight. Abbott said that he had seen nothing in Gregory's hand, but had noticed that Douglas was holding "something". He stated that Douglas fell on top of Gregory in the course of the fight, that he then separated them and saw a "little object" in Gregory's hand. On cross-examination Abbott added that he had seen Douglas run after Gregory, that Douglas had been jealous of Gregory, and had threatened Gregory and had pushed him around. He testified that Douglas had carried a knife which he kept on his machine, and that he had seen blood on Gregory's head after the fight.

On re-direct examination the government brought out the fact that Abbott had previously testified at a coroner's inquest, and then asked the court to allow impeachment of the witness on the ground that it had been surprised by his testimony. The government attorney then proceeded to read from the transcript of the coroner's inquest, asking Abbott whether he had testified as indicated by the transcript. In this manner the government introduced statements allegedly made by Abbott that Gregory looked angry and had struck Douglas on their first encounter on the day of the fight, and that Douglas had not been the aggressor in any of the arguments. The government also introduced statements attributed to Abbott that he had seen Gregory display a weapon to Douglas before the fight; that Douglas had said he did not want to get into trouble the night before the fight; that Gregory had said he was going to "get" Douglas; and that Abbott had often seen Gregory carrying a screwdriver.

■■ Prior statements of witnesses are hearsay and are generally inadmissible as affirmative proof. Bridges v. Wixon, 1945, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103. The rule is firmly established in this Court that when a party is surprised by his witness's testimony, he may introduce prior inconsistent statements made by the witness, but only for the purpose of impeaching the witness's credibility. United States v. Dobbs, 5 Cir. 1971, 448 F.2d 1262; State v. Durham, 5 Cir. 1971, 444 F.2d 152; United States v. Johnson, 5 Cir. 1970, 427 F.2d 957; United States v. Hicks, 5 Cir. 1970, 420 F.2d 814; Young v. United States, 5 Cir. 1938, 97 F.2d 200. The impeaching testimony, moreover, is limited by the fact of surprise. It may be admitted only insofar as it serves to remove the damage which the surprise has caused, and it may not be used to smuggle in the testimony which the party expected the witness to supply. United States v. Dobbs, 5 Cir. 1971, 448 F.2d 1262, 1263; United States v. Hicks, 5 Cir. 1970, 420 F.2d 814, 816; Slade v. United States, 5 Cir. 1959, 267 F.2d 834; Culwell v. United States, 5 Cir. 1952, 194 F.2d 808. As the Court said in *Young:*

In no event may the fact that a witness has made contradictory state-

ments be used . . . as a basis for completely discarding the rules of evidence against hearsay and ex parte statements, and, as impeachment, opening the flood gates of prejudicial and damaging hearsay.

Young v. United States, 5 Cir. 1938, 97 F.2d 200, 206. In order to avoid the prejudicial effects of admitting hearsay, this Court has suggested that the preferred procedure in cases of surprise is to permit the surprised party to withdraw the witness and strike his testimony from the record. United States v. Dobbs, 5 Cir. 1971, 448 F.2d 1262, 1263; Thomas v. United States, 5 Cir. 1961, 287 F.2d 527, 529; Culwell v. United States, 5 Cir. 1952, 194 F.2d 808, 811; Young v. United States, 5 Cir. 1938, 97 F.2d 200, 206.

■ In the present case the use of Abbott's testimony before the coroner's inquest ranged well beyond the narrow limits imposed by the decisions in this Court. The trial court did not require the government to make a showing as to precisely how and in what particulars it had been surprised. Thus the government never established the foundation necessary to permit, and to limit, impeachment. See State v. Durham, 5 Cir. 1971, 444 F.2d 152, 156.

■ The government then proceeded to introduce, by way of questioning, an impermissibly broad supply of Abbott's former testimony. Some of the statements thus introduced, such as Abbott's prior statement that he had seen Gregory carrying a weapon when Gregory approached Douglas, did contradict Abbott's trial testimony. But other statements admitted for impeachment supplemented Abbott's account, without specifically contradicting anything which he had said in his trial testimony. Among these were Abbott's statements that he had often seen Gregory carry a screwdriver; that he had heard Gregory say that he was going to "get" Douglas; that Douglas was never the aggressor; and that Gregory looked angry when he approached Douglas. The government, in other words, brought in affirmative evidence under the guise of impeachment, in a manner directly contrary to the strictures of a long line of cases in this Court.

The evidence introduced in the course of impeachment was highly prejudicial to Gregory, who was on trial for his life. The testimony as to Gregory's aggressive behavior toward Douglas, that Gregory often carried a weapon, and in particular that Gregory had threatened to "get" Douglas constituted damaging evidence of malice and premeditation. The damage was compounded by the fact that no other witness testified to these matters.

There may have been undue prejudice even in the admission of statements which did directly contradict Abbott's trial testimony. The government never established prior to impeachment the manner in which it had been surprised. See State v. Durham, 5 Cir. 1971, 444 F.2d 152, 156. Further, there was some doubt as to whether the transcript of the coroner's inquest was an accurate recording of what Abbott had said. The coroner's clerk testified that she had not taken a verbatim transcript at the inquest, but had instead combined the coroner's questions and Abbott's answers into narrative form. On examination by the government attorney Abbott admitted to having said some of the things which were attributed to him in the record of the inquest. But he did not acknowledge the statement that Gregory had looked angry, and he denied saying that Gregory had often carried a screwdriver and had pulled it out and showed it to Douglas. He disputed whether he had said that Gregory had hit Douglas a second time and that Gregory had "struck" Douglas. On examination by the defense attorney Abbott stated that he did not know the meaning of some of the words attributed to him.

■ The trial court did not attempt to repair the damage done to Gregory's cause in its charge to the jury. The court failed to instruct the jury that the impeaching statements could be taken

only as evidence of credibility and not as affirmative evidence. The government points out in its brief that no such instruction was requested. The government also urges that juries cannot understand such a distinction, and that a failure to explain it to a jury cannot therefore be harmful. This Court, however, has strongly adhered to the position that the distinction between statements used to destroy credibility and those used to establish affirmative facts "should be delineated sharply in terms readily understandable by the jury." Slade v. United States, 5 Cir. 1959, 267 F.2d 834, 839. See Valentine v. United States, 5 Cir. 1959, 272 F.2d 777.

The government argues strongly that, given recent developments in the law, Abbott's prior statement was properly admissible in its entirety as affirmative proof. We disagree. The government relies heavily on California v. Green, 1970, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489. Green held only that the common-law hearsay strictures against substantive use at trial of a witness's prior statements were not constitutionally mandated. None of the cases in this Court establishing the limits on the use of prior statements against one's own witness have ever suggested that the limits were founded on constitutional considerations. To the contrary, the rule in this circuit is based on the purely evidentiary consideration of preventing the introduction of "prejudicial and damaging" evidence. Young v. United States, 5 Cir. 1938, 97 F.2d 200, 206.

Nor are we persuaded by the government's reliance on allegedly contrary decisions by other courts. In United States v. Borelli, 2 Cir. 1964, 336 F.2d 376, the Second Circuit permitted the use of a witness's prior statement as affirmative evidence. But in Borelli, unlike the present case, the witness specifically affirmed the truth of the prior statement on the witness stand. See United States v. Nuccio, 2 Cir. 1967, 373 F.2d 168, 172. United States v. DeSisto, 2 Cir. 1964, 329 F.2d 929, is more closely related to the case before us. The Court there permitted introduction of a witness's grand jury testimony as affirmative evidence. We express no opinion as to the correctness of that holding. It is sufficient to point out that the Court in DeSisto noted that the impeaching testimony was a verbatim transcript. The DeSisto opinion thus distinguished Bridges v. Wixon, 1945, 326 U.S. 135, 65 S.Ct. 1443, 89 L. Ed. 2103, on the ground that the prior statements found inadmissible as substantive evidence in Bridges consisted of a stenographer's notes of an interview, the accuracy of which the witness denied. The present case, in which Abbott was impeached with statements not transcribed verbatim and of disputed accuracy, is thus much closer to Bridges than to DeSisto.[6]

We hold therefore that Gregory's conviction must be reversed, because of the omissions in the trial transcript and because the impeachment of Abbott at the trial with his prior testimony exceeded the narrow bounds set by long-established practice in this Circuit.

The judgment of the district court is reversed, and the case remanded for further proceedings in accordance with this opinion.

---

6. Abbott testified before the grand jury which indicted Gregory. The government did not attempt to use any of Abbott's statements before the grand jury to impeach him at the trial. Instead, the government attorney merely asked Abbott whether his testimony before the grand jury had been the same as his testimony before the coroner's inquest. Abbott responded that he did not think it had been.