**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Regino PALACIOS, Defendant-Appellant.**

**No. 76–2172.**

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1977.

---

Oscar J. Pena, Laredo, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., George A. Kelt, Jr., Asst. U. S. Atty., Hous-

ton, Tex., Rene J. Gonzalez, Asst. U. S. Atty., Laredo, Tex., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GODBOLD, SIMPSON and GEE, Circuit Judges.

SIMPSON, Circuit Judge:

The indictment below was against the appellant Regino Palacios and a co-defendant, Cecilia Garcia. Palacios was charged with (1) conspiring with Garcia to possess marijuana with intent to distribute it, in violation of 21 U.S.Code, §§ 841(a)(1) and 846; and (2) aiding and abetting Cecilia Garcia in the possession of 100 pounds of marijuana with intent to distribute, in violation of 21 U.S. Code, § 841(a)(1), and 18 U.S.Code, § 2. The conspiracy count charged several overt acts in furtherance of the conspiracy, committed by Palacios or Garcia or both. Cecilia Garcia was tried separately and found guilty by a jury.

Palacios had three jury trials, the first two resulting in mistrials.[1] In the third trial, the court denied appellant's motions for judgment of acquittal. The third jury convicted Palacios on both charges. The trial court sentenced him to consecutive 5 year confinement terms to be followed by a special parole term of 5 years on each count.

While Palacios raises a number of issues[2] on appeal, we believe that the second point urged, the insufficiency of the evidence, presents the most serious attack on the convictions. We conclude from our study of the record in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), that we should reverse on this ground. Accordingly, we find it unnecessary to reach the other six issues.

## I. THE UNDERLYING FACTS

On September 9, 1975, Leonard Williams, an agent with the Drug Enforcement Administration (DEA) was prompted by a phone call from an informer to establish surveillance of various travel bureau offices in downtown Laredo, Texas. He instructed Special DEA Agent George Tomlinson to attempt to locate Regino Palacios and a young female named Cecilia wearing pink slacks and a pink blouse. On this same day, Cecilia Garcia, who fit the above description, embarked on a trip to visit her mother in St. Paul, Minnesota, via Chicago, Illinois. She took a taxi to a Phillips 66 gas station where, after some delay, the travel bureau van going to Chicago picked her up. Her baggage was placed on top of the van. The van then proceeded to the Transportes Hispanos Travel Agency office in Laredo, with DEA agents keeping Garcia and the van under surveillance. The next stop was a restaurant called "El Taquito Millonario No. 2" where more passengers were picked up. Here, the appellant Palacios was seen talking to Cecilia Garcia. Finally, the van left Laredo travelling north on Interstate 35 (commonly known as the San Antonio Highway). Agents of the Immigration and Naturalization Service halted the van at a Border Patrol permanent check-point approximately eleven miles north of Laredo. The driver was ordered to unload the baggage from the roof of the van and all

---

1. Appellant was found guilty at his first trial, but a mistrial was later declared by the court. The second trial ended in a hung jury.

2. The issues raised are: (1) admissibility of unsworn, out-of-court statements by co-defendant Garcia; (2) insufficiency of the evidence; (3) admissibility of other crimes evidence; (4) admission of evidence showing that Palacios had been convicted by another jury on the same counts; (5) admission of other irrelevant and prejudicial evidence; (6) failure of the court to disclose the identity of the informer or to conduct an *in camera* determination of whether the informer participated in the alleged offenses; (7) prosecutorial misconduct.

passengers were asked to claim their baggage. All baggage was claimed except three suitcases and a Schlitz beer carton box. When the driver was questioned about the ownership of the unclaimed luggage, he pointed to co-defendant Cecilia Garcia. Garcia denied ownership. The agents opened this luggage and found 100 pounds of marijuana. At this point, a DEA agent read the Miranda warning to Garcia and arrested her. The DEA agents then questioned her about the appellant and the suitcases filled with marijuana. An address book found in Garcia's purse contained a Chicago address and telephone number in the appellant's handwriting. During this time, Palacios drove past the checkpoint in a maroon van. His arrest followed in a short time. Garcia was subsequently taken to the DEA offices for further questioning. At this time she signed an unsworn statement which caused much confusion at appellant Palacios' trial.

At the third trial the government called Garcia as its first witness. After asking her name, age, and place of birth, government counsel next asked her if she is the same Cecilia Garcia who was indicted and found guilty of possessing marijuana and of conspiring with the appellant to do so. During this direct examination, Garcia admitted having a very close relationship with the appellant. She stated that she considered herself to be his common law wife. Government counsel then began to question Garcia regarding the three page statement she gave to the DEA agents after she was arrested and searched on September 9, 1975. She admitted making the statement, but she denied the truth of much of it. Government counsel went through the statement line by line and had Garcia read most of it aloud in court. She claimed that she had lied in the prior statement because she wanted to take revenge against Palacios for hurting her.[3] Garcia admitted that

the Chicago address in her address book was in appellant's handwriting, that she had seen him the morning of the day she was arrested, and again, briefly, at the restaurant "El Taquito Millonario". She denied, however, that the appellant had anything to do with the marijuana found in her possession. Defense counsel repeatedly asked the court to instruct the jury that the prior inconsistent statement, in which Garcia directly implicated Palacios, was not substantive evidence. The trial judge declined to do so during Garcia's examination. In his final charge, however, the judge instructed the jury to consider Cecilia Garcia's prior inconsistent statements only for impeachment purposes.

Most of the government's other witnesses[4] simply stated that they had heard Garcia implicate Palacios in the marijuana offense. DEA agent Leonard Williams testified that he heard Garcia state at the time of her arrest that she had received the marijuana from Palacios. Agent Williams further stated that in 1974, Palacios was arrested with some other persons on a marijuana charge. The resulting case against Palacios, however, was dismissed. DEA agent George Tomlinson testified that he had participated in the 1974 arrest, and that, while at the DEA office, Palacios dropped a folded paper napkin containing what appeared to be marijuana.

Palacios called one witness, and then testified himself. He denied giving Garcia the suitcases filled with marijuana. On cross-examination it was revealed that he did not pay income taxes. It was also established that the appellant had been stopped a few months subsequent to the time of the alleged offenses in the instant case and found in possession of approximately $4,000.

## II.  GARCIA'S PRIOR INCONSISTENT STATEMENT

██  "Prior statements of witnesses are hearsay and are generally inadmissible as

---

3. Palacios had a wife and family at time of his relationship with Garcia.

4. Two witnesses did not appear at trial due to unavailability. Testimony given by them at

one of the prior trials was read to the jury. Defense counsel's objections to the use of such testimony were overruled.

affirmative proof." *United States v. Gregory*, 472 F.2d 484, 487 (5th Cir. 1973). It is a well-established principle of evidence that prior inconsistent statements of a witness are admissible to impeach that witness. See *Slade v. United States*, 267 F.2d 834 (5th Cir. 1959); *United States v. Gregory, supra; United States v. Garcia*, 530 F.2d 650 (5th Cir. 1976). In the past, this Court has adhered to the orthodox view that such statements should not be introduced as substantive evidence, but should be used only to impeach credibility. *United States v. Hill*, 481 F.2d 929, 932 (5th Cir. 1973), cert. denied, 414 U.S. 1115, 94 S.Ct. 847, 38 L.Ed.2d 742. Under this view, a party's impeachment of his own witness was limited by the element of surprise. *United States v. Gregory, supra; United States v. Hill, supra.* The new Federal Rules of Evidence, effective July 1, 1975, permit impeachment of a witness by any party, including the party calling him. Fed.R. Evid. 607. Under Rule 607 the government's impeachment of Garcia by her prior inconsistent statement was proper without a showing of surprise.[5] See *United States v. Alvarez*, 548 F.2d 542, 543 (5th Cir. 1977); *United States v. Sisto*, 534 F.2d 616, 623 n. 8 (5th Cir. 1976). But this works no change in the traditional view that prior unsworn inconsistent statements are hearsay[6] and generally should not be considered by the jury as direct evidence of guilt.[7] *United States v. Sisto, supra*, 534 F.2d at 623. See also *United States v. Beasley*, 545 F.2d 403, 405–406 (5th Cir. 1977).

## III. SUFFICIENCY OF THE EVIDENCE

In keeping with this viewpoint, the trial judge instructed the jury that Cecilia Garcia's written statement, which she denied to be true, should be considered only for impeachment purposes. Thus, the impeaching statement could be taken only as evidence of credibility and not as affirmative evidence of appellant's guilt or innocence. With the court's instruction in mind, we weigh the evidence other than the Gar-

---

5. This trial took place in February 1976. The government would have had difficulty establishing surprise since Garcia had asserted prior to trial that she would not implicate Palacios in her ·trial testimony.

6. A prior statement of a witness which is inconsistent with his trial testimony and was given under oath, subject to the penalty of perjury, at a trial hearing or other proceeding or in a deposition, is not hearsay. Fed.R.Evid. 801(d)(1).

7. Of course, a statement which is otherwise hearsay evidence may be admissible as substantive evidence if it falls within one of the exceptions to the hearsay rule. See Fed.R. Evid. 803, 804. Federal Rule of Evidence 803(24) is a catch-all provision setting forth miscellaneous exceptions. See *United States v. Leslie*, 542 F.2d 285 (5th Cir. 1976). (In *Leslie*, the Court found that a prior inconsistent statement could fit into the Rule 803(24) exception. The Court also found, however, that there was sufficient substantive evidence aside from the controversial prior inconsistent statement to sustain the verdict.)

We are unwilling to make the determination that the circumstances at Palacios' trial qualified Garcia's pre-trial statement as an exception. The trial court failed to find that Garcia's statement satisfied the requisite conditions set forth in Rule 803(24).

The legislative history of the Federal Rules of Evidence is instructive in this respect. The Senate Judiciary Committee stated its intention that the residual hearsay exceptions are to be used "rarely", and only in "exceptional circumstances". S.Rep.No. 93–1277, U.S.Code Cong. & Admin. News, 93d Cong., 2d Sess., p. 7066 (1974). "The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action." *Id.* The Committee further stated that the special facts and circumstances which lead the trial judge to allow an exception under Rule 803(24) should be stated in the record. Indeed, the trial judge in the instant case specifically commented (outside the presence of the jury) that he seriously doubted the trustworthiness of *any* of Garcia's statements. No exception has been shown to encompass Garcia's prior inconsistent statement, and, thus, it could "have no legal tendency to establish the truth of [its] subject-matter." *Culwell v. United States*, 194 F.2d 808, 811 (5th Cir. 1952).

cia unsworn statement in the light most favorable to the government, *Glasser v. United States, supra,* to ascertain whether that evidence will sustain appellant's convictions. The remaining evidence against Palacios was circumstantial.[8] The standard for review of the sufficiency of evidence to support conviction is the same whether the evidence is direct or circumstantial. See *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Warner,* 441 F.2d 821 (5th Cir. 1971), cert. denied 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58. Before sending a case to the jury, after motions for judgment of acquittal, it is the trial judge's duty to determine if the jury must necessarily entertain a reasonable doubt as to the accused's guilt. *United States v. Bright,* 550 F.2d 240 (5th Cir. 1977); *United States v. Haggins,* 545 F.2d 1009 (5th Cir. 1977); *United States v. Hill, supra.*

■ The essential elements of the criminal conspiracy as charged by the indictment are an agreement by two or more persons to combine efforts for an illegal purpose and an overt act by at least one of those persons in furtherance of the agreement.[9] *United States v. Bright, supra; United States v. Fontenot,* 483 F.2d 315 (5th Cir. 1973). Proof of the illegal agreement or common purpose may rest upon either direct evidence or upon inferences drawn from relevant and competent circumstantial evidence. *United States v. Warner, supra.* Such proof, however, "must convince beyond a reasonable doubt that a conspiracy existed, that the defendant knew it, and with that knowledge intentionally did some act or thing to further or carry on that conspiracy." *Causey v. United States,* 352 F.2d 203, 207 (5th Cir. 1965). To sustain a conviction for aiding and abetting another to commit a crime, the evidence must show that the defendant associated himself with the venture, participated in it, and that he acted to make it succeed. *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769–770, 93 L.Ed. 919 (1949).

■ Careful examination of the record leads us to conclude that a reasonable jury

---

**8.** In discussing appellant's motion for acquittal, at the close of the government's case, the trial court commented:

"Well, the problem in this case is after listening to Cecilia Garcia three times, I don't think that she knows what the truth is. . . . I think if we didn't have the address book, I don't know if I would let this case go to the jury room."

**9.** In prosecutions for conspiracy under 21 U.S.C. § 846, no overt act need be alleged or proved at trial, *United States v. Beasley,* 519 F.2d 233, 247 (5th Cir. 1975), vacated and remanded on other grounds, 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976); see also *United States v. Burts,* 536 F.2d 1140, 1141 (6th Cir. 1976), cert. denied 429 U.S. 1044, 97 S.Ct. 746, 50 L.Ed.2d 756 (1977); *United States v. Dreyer,* 533 F.2d 112, 117 (3rd Cir. 1976); *United States v. DeJesus,* 520 F.2d 298, 301 (1st Cir. 1975), cert. denied, 423 U.S. 865, 96 S.Ct. 126, 46 L.Ed.2d 94 (1976). But the indictment here alleged five overt acts committed by Palacios, or Garcia, or both, and the district judge in his jury instructions treated the conspiracy count as though drawn under the general conspiracy statute, 18 U.S.C. § 371 which requires at least one overt act to be alleged and proved to constitute an offense. 21 U.S.C. § 846 provides:

"Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 18 U.S.C. § 371, on the other hand, reads: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and *one or more of such persons do any act to effect the object of the conspiracy,* each shall be fined not more than $10,000 or imprisoned not more than five years, or both." The situation is confused by several Fifth Circuit cases which have proceeded upon the assumption that overt acts must be alleged and proved under 21 U.S.C. § 846 or its sister statute, dealing with conspiracy to import, 21 U.S.C. § 963. See *United States v. Bright,* 550 F.2d 240, 241 (5th Cir. 1977); *United States v. Seelig,* 498 F.2d 109, 112 (5th Cir. 1974); *United States v. Toombs,* 497 F.2d 88, 94 (5th Cir. 1974).

could not have found the offense under either charge made out beyond a reasonable doubt against Palacios. The legally competent evidence here was not sufficient for a reasonably minded juror to find Palacios guilty beyond a reasonable doubt. The government points to the following "numerous and suspicious circumstances" from which the jury could have inferred appellant's guilt: (1) The travel van driver who transported Garcia on September 9, 1975, testified that the baggage later found to contain marijuana belonged to Garcia. (2) Garcia admitted talking to Palacios that morning. Palacios admitted that he had lived with her at one time. Other evidence revealed that they had maintained a "close relationship" for some time. (3) Palacios was seen talking to Garcia at the Taquito Millonario Restaurant prior to her departure to Chicago. (4) He was again seen driving past the checkpoint where the marijuana was discovered. (5) The Chicago address in Garcia's address book was in appellant's handwriting. According to the government, this was inferentially the place of delivery for the marijuana. The government finally urges that the conspiracy was clearly established by proof that the Chicago address was in appellant's handwriting. These bits of evidence add up to no more than ground for conjecture and suspicion that Palacios may be guilty, not acceptable proof of guilt.

■ Palacios had a close relationship with Garcia and had seen her twice on the day of her arrest, but neither mere presence nor a close association suffices without more to make out a conspiracy charge. See United States v. Duckett, 550 F.2d 1027, 1030 (5th Cir. 1977); United States v. Sanchez, 508 F.2d 388 (5th Cir. 1975), cert. denied, 423 U.S. 827, 96 S.Ct. 45, 46 L.Ed.2d 44. No substantive evidence was introduced relating to the Chicago address. It was never linked to the marijuana. There was no sufficient proof that a conspiracy existed, much less that Palacios knew of and participated in a conspiracy, assuming that one existed. Nor was there ground for

more than mere suspicion that he in any way participated in Garcia's possession of marijuana.

The government also proved that the appellant was once before arrested on a marijuana charge (the case was later dismissed), that he did not pay income taxes, and that subsequent to September 9, 1975, he was found in possession of approximately $4,000. These facts assuming their competency provide only a tenuous nexus between Palacios and the specific crimes charged, consistent with many explanations not pointing to guilt. "Reasonable hypotheses of innocence were not excluded." *United States v. Black,* 497 F.2d 1039, 1041 (5th Cir. 1974).

■ While acts lawful in themselves lose that character when they become elements of a conspiracy, nevertheless the prosecution must first prove the existence of a conspiracy in fact, and that the appellant knowingly participated in it. Such proof was simply not present.

Making all such reasonable inferences and credibility choices as will support the jury's verdict, *United States v. Black, supra,* the evidence was insufficient to sustain the convictions. Juries must not be permitted to convict on suspicion and innuendo. Under the shadow of Garcia's prior statement, Palacios appeared to be a generally unsavory, suspicious character. The jury was allowed to speculate and infer the appellant's guilt from this and from numerous suspicious but unconnected facts. The United States failed to prove guilt by accepted standards. The judgment appealed from is

REVERSED.