63 So.2d 339 (1952)
KAMINSKI et al.
v.
STATE.
Supreme Court of Florida, en Banc.
November 14, 1952.
On Rehearing February 24, 1953.
Ben Cohen, Miami Beach, George C. Dayton, Dade City, and Weldon G. Starry, Tallahassee, for appellants.
Richard W. Ervin, Atty. Gen., Boone D. Tillett, Jr., and William A. O'Bryan, Asst. Attys. Gen., for appellee.
PER CURIAM.
The record and the briefs in this cause have been examined. Mr. Chief Justice SEBRING, Mr. Justice HOBSON and Mr. Justice ROBERTS are of the view that the judgment appealed from should be reversed.
Mr. Justice THOMAS, Mr. Justice MATHEWS, Mr. Justice DREW and Mr. Justice TERRELL are of the view that the judgment appealed from should be affirmed.
It follows that the judgment appealed from must be and is hereby affirmed.
Affirmed.
SEBRING, C.J., and TERRELL, THOMAS, HOBSON, ROBERTS, MATHEWS, and DREW, JJ., concur.

On Rehearing
SEBRING, Justice.
The appellants, who were the defendants below, were tried and convicted of the crime of assault with intent to murder one Holton Newbold by shooting and beating him.
At the trial Newbold identified the defendants as his assailants and then testified at considerable length and with scrupulous detail concerning certain events and incidents which allegedly had occurred prior to the assault and which, if true, were sufficient to establish a motive for the shooting and beating. No other testimony was adduced by the prosecution to establish the identity of the assailants or that tended to place the defendants in the company of the prosecuting witness or at or near the scene of the crime immediately prior or at the time of its commission.
At the conclusion of the State's interrogation, Newbold was subjected to rigid cross-examination by defense counsel in an effort to destroy his credibility as a witness. After this cross-examination the State produced other witnesses, who gave testimony that was at considerable variance with the testimony given by the prosecuting witness in respect to the events and incidents supposed to have occurred prior to the commission of the crime. Following the giving of this testimony Newbold was recalled to the stand for further questioning by the State, and the following happened:
"Q. Holton, did you consent to and take a lie detector test while being examined by Mr. Henderson?
"Mr. Cohen: We object to the question on the ground it is immaterial whether he consented or objected to taking a lie detector test, and if the Court will withdraw the jury * * *. (Argument of counsel off record.)

*340 "The Court: The objection will be overruled and the motion denied. He can answer the question and after he answers it, the State or the defense will be permitted to show what the test was on.
"Q. Did you take such a test? A. I did."
After this redirect examination the State rested its case. Thereupon, one of the defendants took the witness stand and testified to certain facts which, if believed, were sufficient to establish alibis for both defendants, and other defense witnesses gave evidence which tended to contradict the testimony given by the prosecuting witness in respect to matters and events apparently deemed by the prosecution to be material to its case.
At the conclusion of the entire evidence the case was submitted to the jury, who returned a verdict of guilty as charged.
The defendants have appealed from the judgment entered on the verdict and have assigned as one of the grounds for reversal the action of the trial judge in allowing the prosecuting witness to testify that he had submitted to the lie detector test.
We find, without a single exception, that every court of last resort that has been called upon to decide the question has ruled that results obtained from the so-called lie detector test are not admissible as evidence. As the matter is stated in one of the earliest reported cases on the subject:
"We think the systolic blood pressure deception test has not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made." Frye v. United States, 54 App.D.C. 46, 293 F. 1013, 1014, 34 A.L.R. 145. For other cases on the point see also People v. Forte, 279 N.Y. 204, 18 N.E.2d 31, 119 A.L.R. 1198; State v. Cole, 354 Mo. 181, 188 S.W.2d 43, 189 S.W.2d 541; Henderson v. State, Okl.Cr.App., 230 P.2d 495, 23 A.L.R.2d 1292; People v. Wochnick, 98 Cal. App.2d 124, 219 P.2d 70; State v. Lowry, 163 Kan. 622, 185 P.2d 147; State v. Pusch, 77 N.D. 860, 46 N.W.2d 508; Boeche v. State, 151 Neb. 368, 37 N.W.2d 593; Le Fevre v. State, 242 Wis. 416, 8 N.W.2d 288; People v. Becker, 300 Mich. 562, 2 N.W.2d 503, 139 A.L.R. 1171. See also Wigmore on Evidence, 3d Ed., Vol. III, Sec. 999, note 2; and 20 Am.Jur. 633.
The Attorney General does not deny that the rule in respect to admissions is as has been stated. He contends, however, that none of the decisions relied on by the appellants are relevant to the case at bar, for the reason that they involve the question of the admissibility or inadmissibility of results from lie detection tests, and not the question whether testimony as to the taking of a lie detector test is admissible for the purpose of rehabilitating a witness. As he states the matter in his brief, "Actually, what the appellant is complaining of here is the fact that after his counsel had drawn out on cross-examination certain facts, and in a manner so as to insinuate by inferences, and otherwise, in the minds of the jury that the complaining witness was not truthful and hence not worthy of belief, the trial court, over appellant's objection, permitted the prosecutor on redirect examination to ask the complaining witness if he had submitted to a lie detector test during the investigation of the alleged crime, in order to allow the prosecutor an opportunity to rehabilitate the credibility of his witness." (Emphasis supplied.)
We agree with the Attorney General that the prosecutor must have offered the evidence for the purpose stated; indeed, there could have been no other purpose for submitting it  and that is precisely the reason the defendants are complaining about it.
We agree with their position. When the trial judge allowed the evidence to be admitted, and sanctioned the submission by the statement he made, we are of the view that he committed as egregious an error as if he had admitted the results of the test to have been received in evidence over objection. For there can be no doubt that in initiating the inquiry the prosecutor intended to leave in the minds of the jurors the *341 impression that because the witness Newbold had voluntarily submitted to a lie detector test prior to the time of trial he was a man of veracity and hence was telling the truth from the witness stand, no matter how inconsistent his tale might appear to be to the jurors when compared with the testimony offered by other State witnesses.
Can it logically be argued that the putting of the questions and the allowance of the answers under the circumstances prevailing at the trial did not have a direct and profound tendency to influence or prejudice the minds of the jurors against the defendants? Can anything be clearer than that when defense counsel failed to cross-examine the witness as to the results of the test, after the court had announced that that course would be open to him in respect to "what the test was on," an impression must have been implanted in the minds of the jurors that the result of the lie detector test had been unfavorable to the cause of defendants or else the inquiry would have been made?
It was not fair to place the defendants in the entrapped position that required them at their peril either to pursue the inquiry as to the nature of the results of the test or to be damned by the adverse impressions which naturally would be expected to flow from their failure to do so. The practical effect of the admission of the testimony, as fortified by the remarks of the trial judge when he overruled the objection, was to allow, by inference, the admission of damaging evidence that would not have been legally admissible had it been submitted directly. In a situation where the State's whole case depended entirely upon the testimony of a witness whose credibility appears to have been seriously shaken not only by cross-examination but by evidence given by other State's witnesses as well, the defendants should not have been placed in this intolerable position.
Whatever the guilt or innocence of the defendants may ultimately prove to be, there can be no escape from the fact that at the trial they were entitled to the presumption of innocence with which the law clothes all persons accused of crime until proven guilty beyond a reasonable doubt by legally competent evidence. The successful attempt by the prosecution by the means employed to implant in the minds of the jury the impression that because the witness had voluntarily submitted to a lie detector test prior to trial he must perforce be testifying truthfully in the course of the trial, resulted, in effect, in the substitution of a mechanical device, without fair opportunity for cross-examination, for the time-tested, time-tried, and time-honored discretion of the judgment of a jury as to matters of credibility.
For the reasons stated, we are of the view that we should recede from the former opinion of this Court affirming the judgment and that the judgment appealed from should be reversed and a new trial awarded.
It is so ordered.
HOBSON, C.J., and ROBERTS, MATHEWS and DREW, JJ., concur.
TERRELL and THOMAS, JJ., dissent.