UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph A. NICKERSON and Danny Joe
Hawkins, Defendants-Appellants.

No. 80–5885.

United States Court of Appeals,
Fifth Circuit.*
Unit B

March 11, 1982.

* Former Fifth Circuit case, Section 9(1) of Public     Law 96–452—October 14, 1980.

Raymond W. Russell, Richard M. Saccocio, Fort Lauderdale, Fla., for Nickerson.

Edward McHale, Coral Gables, Fla., for Hawkins.

Atlee W. Wampler, III, U. S. Atty., Michael P. Sullivan, Asst. U. S. Atty., Miami, Fla., William C. Bryson, Gloria C. Phares, Washington, D. C., for the U. S.

Before FAY, FRANK M. JOHNSON, Jr., and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

This appeal arises out of the convictions of Joseph A. Nickerson and Danny Joe Hawkins for their activities regarding plots to smuggle marijuana into the United States. Specifically, Nickerson was convicted of conspiring to import marijuana in violation of 21 U.S.C. § 952 and of conspiring to possess marijuana in violation of 21 U.S.C. § 846. Hawkins was convicted on both conspiracy counts as well as for possession of marijuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). The appellants claim that the district court made several errors which require the reversal of their convictions. We reject these contentions and affirm their convictions.

The appellants were both associated with a large marijuana importation ring directed by Edward Savage, one of the individuals indicted below. The appellants, together with the other co-defendants, were charged with a total of twenty-one drug offenses occurring between October 1976 and July 1977.

During October 1976, an incident occurred which ultimately established a link between Hawkins and the marijuana importation ring. A Dade County detective, acting in an undercover capacity, met with Edward Savage in order to purchase four tons of marijuana. Although this particular deal fell through, arrangements were later made for the delivery of two and one-half tons of marijuana from Colombia for $295 per pound. This load of marijuana was to land at Homestead General Airport on the night of January 19, 1977. This plane, however, crashed in the Bahamas and in place of the lost cargo, Savage offered the undercover agent one thousand pounds of marijuana. It was arranged that this marijuana would be delivered to a furniture store parking lot in North Dade, Florida. Savage promised to be in a white Cadillac at 7 p. m. When the undercover agent arrived, he saw Savage next to the store and the appellant Hawkins and another man inside the automobile. Arrangements were then made as to the details of the transaction next to the Cadillac, while Hawkins waited inside with the window open. When the undercover officer refused to go elsewhere to inspect the marijuana, it was agreed that the transaction would be completed in the parking lot. Hawkins and the other man then drove off. They soon returned, and shortly thereafter a truck filled with marijuana showed up.

The undercover agent inspected the marijuana. He explained that he had to take a sample to his organization and would return with the money. Thereafter, all on the scene were arrested.

Undaunted by this setback, the intrepid band of drug smugglers were soon on the street again and back in business. The next incident was to tie Nickerson into the ring. The next month, Savage bribed Deputy Jimmy Cypress of the Hendry County, Florida, Sheriff's Department. Cypress, one of the leaders of the Seminole tribe, patrolled the Seminole Indian Reservation,[1] and it was arranged that drug-laden planes would land at a remote location there.

Nickerson and Hawkins met with Cypress on various occasions during the next several months. They brought a pickup truck to Cypress, which afterwards was used by the drug ring to transport marijuana off-loaded from the planes. Once, while Nickerson was using the truck, Cypress testified that he told him a planeload of marijuana was to be landed shortly. On other occasions, both Nickerson and Hawkins delivered payments from Savage to Cypress.

During this time, a number of short trips to Freeport, in the Bahamas, were made by a pilot in the pay of Savage. This pilot, Herman Hernandez, testified that he would fly to Freeport, pick up a load of marijuana, and then fly to the Seminole Reservation. He stated that Nickerson flew with him to Freeport on two occasions to meet contacts and to arrange flight signals. He also testified that after landing in the reservation, Nickerson would be waiting to help unload the marijuana. Although usually he was met by Nickerson alone, at least on one occasion he was also met by Hawkins. Hernandez also testified that on several occasions he saw Nickerson and Hawkins at Savage's house, where they had gathered to discuss future flights. The drug ring was afterwards broken up.

The appellants claim that the trial court committed error when it denied their motion for a mistrial after the prosecution had elicited statements from Hernandez, the government's chief witness, indicating that at previous trials his testimony had resulted in convictions. During cross-examination, it had come out that, in return for cooperating with the government, Hernandez received immunity for thirteen counts of importation of marijuana, thirteen counts of conspiracy, thirteen counts of possession of marijuana, and one count of bail jumping. It was also revealed that through the intervention of the Federal government, Hernandez's pilot license had been reinstated. Further, it was established that Hernandez's family had received funds from the government while Hernandez was acting on its behalf as an informant. During the course of the cross-examination, defense counsel elicited that Hernandez had testified in the other cases in which he had been granted immunity. There were also some minor inconsistencies between Hernandez's testimony and that of other government witnesses.

In the course of redirect examination, the prosecution sought to buttress Hernandez's credibility. The following exchange then took place:

Q [Mr. Sullivan, prosecutor]: How many times have you testified as a federal witness?

MR. RUSSELL [attorney for Nickerson]: Asked and answered, your honor.

THE COURT: Objection overruled. I think it has been covered.

A [Hernandez]: South Carolina, the two bribe cases, that is three; and this one is four.

Q [prosecutor]: And those other three, did the defendants, and every one of them get convicted upon your testimony?

A [Hernandez]: Every one.

MR. McHALE [attorney for Hawkins]: Objection, your Honor.

MR. RUSSELL: Move for mistrial.

Record, vol. 6 at 281. Thereafter, the court consulted with counsel on the motion for

---

1. The State of Florida has extended its civil and criminal jurisdiction over all Indian reservations in the state, Fla.Stat.Ann. § 285.18. It did so pursuant to 25 U.S.C. § 1321.

mistrial and requested assistance in drafting a cautionary instruction. The district judge then decided to deny the motion for mistrial and gave the following cautionary instruction:

THE COURT: Ladies and gentlemen, you are instructed that the Court has stricken the question to the witness Hernandez as a result in other cases that he has testified at the instance of the Government.

The Court has also stricken the answer to that question. The question and answer is, by this ruling, excluded from your consideration.

In that connection, ladies and gentlemen, you are instructed that each case is different from any other case. The evidence on which cases are decided is never really identical in any two cases.

You are of course to consider the issues in this case on the evidence admitted by this Court in this case, and only on that evidence. The outcome of any other case is not to be considered by you in deciding guilt or innocence of any of the Defendants here. You must be guided only by the evidence admitted here coupled with the law that the Government has the burden of proving its case beyond a reasonable doubt. No other jury decision in a case, the facts of which we cannot and should not know, will have any influence on your verdict in this case.

Record, vol. 6 at 293–94.

Both sides are agreed that the prosecutor's question was improper. The only question at issue is whether the cautionary instruction cured the improper question.

In support of their position, the appellants cite *United States v. Miranda*, 593 F.2d 590 (5th Cir. 1979). There, the prosecutor suggested to the jury that another jury had found a co-conspirator guilty of the same offense on less evidence. There existed a clear implication that the jury should therefore convict the defendant. This court held that this argument caused such prejudice to the defendant that no curative instruction could have repaired the damage.

The appellants also urge *United States v. Smith*, 565 F.2d 292 (4th Cir. 1977), and *Kaminski v. State*, 63 So.2d 339 (Fla.1953), upon us as persuasive authority. In *Smith*, a prosecution witness was questioned by the prosecutor about taking a lie detector test. The trial judge struck the evidence and gave a curative instruction to the jury to ignore the question and answer. The Fourth Circuit affirmed the conviction but remarked that it was doing so in part because the witness in question was not a crucial witness. The appellants claim that it also cited *Kaminski* with approval.

The Florida Supreme Court in *Kaminski* reversed a trial court ruling. A prosecution witness was asked on redirect examination whether he had taken a lie detector test and he responded affirmatively. The trial judge did not give a curative instruction. The result, the Florida Supreme Court concluded, was egregious error that required reversal.

Hawkins would further urge upon us cases which stand for the proposition that the prosecutor may not express his opinion on the credibility of a witness (*see, e.g., United States v. Morris*, 568 F.2d 396 (5th Cir. 1978); *United States v. Velasquez*, 496 F.2d 1009 (5th Cir. 1974); *United States v. Martinez*, 466 F.2d 679 (5th Cir.), *cert. denied*, 414 U.S. 1065, 94 S.Ct. 571, 38 L.Ed.2d 469 (1974)) as being analogous to the present situation. Hawkins maintains that in asking the question regarding Hernandez's prior success at testifying for the government, the prosecutor was, in effect, getting the previous juries to vouch for the witness' credibility.

We are unable to accept the appellants' view. In *Miranda*, the prosecutor stated that an earlier jury had found a *co-conspirator* guilty on less evidence. In the instant case, the trial judge concluded that the jury had not perceived Hernandez's testimony as implying that he had testified against any of the appellants' co-conspirators previously. Since that crucial element, present in *Miranda*, is missing here, we find *Miranda* inapposite.

Likewise, we also find *Smith* and *Kaminski* inapplicable. In *Kaminski*, no curative instruction was given by the trial court. *Smith*, which indicated in *dicta* that if the witness in question had been a crucial one it may have reversed the conviction, is also inapposite. The *Smith* court did not cite *Kaminski* with approval but rather distinguished it. Further, it never indicated that, had the witness been a "crucial witness," it would have reversed Smith's conviction. Thus, neither of these cases support the appellants.

■ We also must reject Hawkins' analogy to those cases where the prosecutor has expressed an opinion as to the credibility of a witness. A strong, prompt cautionary instruction may cure an isolated instance of this sort, *United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978). Although in the instant case the prosecutor clearly acted improperly, it was an isolated instance which could be cured by such an instruction.

■ A prejudicial remark may be rendered harmless by curative instructions to the jury. *United States v. Lichenstein*, 610 F.2d 1272 (5th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980). In the instant case, the trial judge issued a prompt and strong curative instruction to the jury. The prosecutor desisted from any further such remarks.

■ We also give considerable weight to the trial judge's assessment of the prejudicial effect of the remark. *United States v. Blevins*, 555 F.2d 1236 (5th Cir.), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978). The district judge believed that his instruction cured the error. In our review of the record, we conclude that he was not incorrect. Therefore, we hold that he properly denied the appellants' motion for mistrial.

■ Nickerson raises the claim that the prosecutorial misconduct during the redirect examination so permeated the entire trial that he was denied his right to a fair trial. Under *United States v. Alanis*, 611 F.2d 123 (5th Cir.), *cert. denied*, 445 U.S. 955, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980),

prosecutorial misconduct must be persistent and pronounced if it is to require reversal. The prosecutorial error in the instant case did not rise to that level. It was an isolated incident that was promptly cured by an instruction. By no stretch of the imagination could it be deemed to have permeated the entire trial. Therefore, we reject Nickerson's contention.

Hawkins contends that the trial court erred in its instructions to the jury on the issue of conspiracy. After the jury had been deliberating for a time, several questions were sent to the court by the jury. Two of those questions are relevant to our inquiry here. First, the jury asked, "if guilty of one overt act in Count 2, is he guilty of all?" Then, it inquired "is one overt act sufficient in Count 2 to render him guilty of the entire act?" The court, after discussing its proposed response with counsel, gave the following answer to the jury:

THE COURT: Now, ladies and gentlemen, in an effort to answer the questions that you've posed here, which we marked Court's Exhibit 3, I wish to read a portion of the charge which you already have out there with you, but I am going to read this portion which I think pretty much provides the answer to questions one and four.

The first question is: "If guilty of one overt act in Count 2, is he considered guilty of all?" and four says; "Is one overt act sufficient in Count 2 to render him guilty of the entire act?"

Seems to me those questions are just about the same. Let me read this portion of the charge.

\* \* \* \* \* \*

THE COURT: In answer to those questions one and four, which I deem to be pretty much the same question, recall that the Court has charged you as follows—and this is a portion of the charge on conspiracy, not the entire charge— "What the evidence in the case must show beyond a reasonable doubt is, number one, that two or more persons, in

some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common or unlawful plan, as charged in the indictment."

Number two, "that the defendant willfully became a member of such conspiracy." Number three, "that one of the conspirators, during the existence of the conspiracy, knowingly committed at least one of the means or methods or overt acts described in the indictment."

Now, that says one of the conspirators. There are a number of conspirators named in this indictment who are not before you in the court, on trial at this trial—you see? So that is an important distinction to pick up out of that third requirement.

Number four, "that such overt act was knowingly committed at or about the time alleged in an effort to effect or accomplish some object or purpose of the conspiracy."

Now, the Government must prove beyond a reasonable doubt those four things in order for you to find either of these Defendants guilty of a conspiracy. That answered the questions one and four. Keep this in mind, neither of these Defendants are charged with overt acts, but they are charged in Counts 2 and 3 of the indictment with conspiracy.

*An overt act is a mere way of showing that a conspiracy existed. They are not charged with the overt acts themselves, but proving overt acts is a way of proving that the conspiracy existed.* (emphasis added).

Record, vol. 7 at 456–58. Hawkins maintains that the court thereby instructed the jury that proof of an overt act is a way of proving that a conspiracy existed, and that the district court committed reversible error.

We decline to accept Hawkins' view of the instruction as requiring reversal. Taken in isolation, the district court's remark was better unsaid. However, under the circumstances in the courtroom at the moment it was not significant. It should be noted that the trial judge did give a correct charge on conspiracy prior to his questionable statement. Further, it should be kept in mind that a supplemental charge is an addition to the original instruction and is not an independent charge. Reversible error does not occur so long as the combined charges viewed as a whole accurately reflect the legal issues. *United States v. Sanfilippo,* 581 F.2d 1152 (5th Cir. 1978). While answering the jury's questions, the court reminded it to consider the written instructions on the issue that had been provided it. This previously given instruction accurately stated the law (*see* Record, vol. 7 at 421–25). Therefore, we hold any error committed by the trial judge to be harmless.

Hawkins also makes the assertion that the evidence was insufficient to convict him on either the possession with intent to distribute or the conspiracy charges. We reject this contention.

The standard for reviewing sufficiency of the evidence claims was succinctly stated in *United States v. Spradlen,* 662 F.2d 724 (11th Cir. 1981):

When reviewing the sufficiency of the evidence supporting a criminal conviction, the standard of review is whether, viewing the evidence and all reasonable inferences derived therefrom in the light most favorable to the government, the jury could conclude that the evidence is inconsistent with every reasonable hypothesis of innocence.

662 F.2d at 727. *See also Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Viewed in this light, the evidence was sufficient to support Hawkins' conviction. As for the possession offense, mere presence of the appellant while the marijuana transaction was taking place would not suffice to convict him. However, there was considerable evidence that Hawkins participated in the furtherance of the transaction. The deal was made within his hearing and he was clearly acting as the driver for the other two drug dealers. Further, it is a reasonable inference that Hawkins drove off to arrange for the marijuana to be brought to the furniture store parking lot after the undercover agent had refused

to go elsewhere to inspect it. Under these circumstances, it was reasonable to conclude that Hawkins was in possession of the marijuana. *See analogously, United States v. Martinez*, 555 F.2d 1269 (5th Cir. 1977).

Hawkins also attacks the sufficiency of the evidence against him on the conspiracy charges. Under the *Spradlen* standard, this contention must also fail. Given that three witnesses Devita, Hernandez and ·Cypress testified as to Hawkins' role in the conspiracy, we cannot say that the evidence was insufficient against him.

Nickerson maintains that the district court erred in denying his motion to sever the trial of the defendants. Nickerson claims that there was no substantial identity of facts or participants as required for proper joinder. Further, he alleges that if the evidence proves any conspiracy at all, it establishes that there were several conspiracies. Accordingly, he claims that there was not a strong enough connection between the conspiracies to satisfy the requirements of Rule 8(b) of the Federal Rules of Criminal Procedure. He further alleges that the failure to sever was highly prejudicial to him and substantially affected his right to a fair trial under *United States v. Levine*, 546 F.2d 658 (5th Cir. 1977).

We reject Nickerson's contentions. To begin with, the government has established that there was one general conspiracy to import marijuana from Colombia into south Florida. Freeport, The Bahamas, was usually the relay point in the route. The same core of persons remained involved in the conspiracy throughout the time charged in the indictment. Nickerson was placed on several plane trips to The Bahamas by Hernandez's testimony, although Nickerson swore he had nothing to do with any contraband. Separately, Cypress stated Nickerson was an unloader at the Indian reservation landing site. The fact that after a time the conspiracy found a safe haven in the Seminole Indian Reservation and shifted its operations there does not detract from its character as a single conspiracy. Further, every member of a conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement. *United States v. Metz*, 608 F.2d 147 (5th Cir.), *cert. denied*, 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1979).

Joinder of the defendants was proper under Rule 8(b) of the Federal Rules of Criminal Procedure. There was clearly one conspiracy. This conspiracy also provided a link to the substantive counts arising out of it, and therefore they were properly joined as well. *United States v. De-Leon*, 641 F.2d 330 (5th Cir. 1981).

Any reliance on *United States v. Levine*, 546 F.2d 658 (5th Cir. 1977), on the part of Nickerson is misplaced. This court there found that the conspiracy count charged two conspiracies rather than one and was premised on an erroneous legal theory. It is therefore inapposite here.

Nickerson also claims that he suffered such prejudice because of his joint trial with Hawkins that, under Federal Rule of Criminal Procedure 14, he was entitled to a severance. Specifically, he alleges that evidence regarding Hawkins' role in the drug purchase by the undercover agent so prejudiced his case that it violated his right to a fair trial.

We also reject this contention. The decision to sever is committed to the trial court's discretion and is reversible only upon a showing of abuse of discretion. *United States v. Wolford*, 614 F.2d 516 (5th Cir. 1980). Nickerson and Hawkins engaged in several joint acts in furtherance of the conspiracy. Since only three witnesses were called by the government, two of whom tied Nickerson to the conspiracy, the jury was not faced with a difficult task in keeping the evidence against each defendant separate. This is borne out by the fact that Nickerson was acquitted on eight of the ten counts against him, while Hawkins was acquitted upon only one count. In light of these facts, we hold that the trial court did not abuse its discretion in denying Nickerson a severance and that he did not suffer prejudice requiring a severance un-

er Rule 14, Federal Rules of Criminal Procedure.

■ Lastly, Nickerson claims that the trial court erred in denying the defendant's motion for continuance in order for the authorities to obtain a tape recording of Hernandez's initial statement. We also must reject this contention. The district court, while denying Nickerson's motion for a continuance, ordered that a thorough search of the Dade County Public Safety Department warehouse be conducted for the tape. It was never found. A motion for continuance is denied upon the discretion of the trial judge and his decision will not be overruled absent an abuse of discretion. *United States v. Tilton*, 610 F.2d 302 (5th Cir. 1980). We do not believe that in the instant case Nickerson was prejudiced by the denial of the motion, and therefore the trial judge's ruling was not an abuse of discretion and must stand.

We have considered all of the contentions of the appellants and have found none of them meritorious. Therefore, affirmation of their convictions is required.

AFFIRMED.

FRANK M. JOHNSON, Jr., Circuit Judge, dissenting:

The majority concludes that any prejudice resulting from the improper questioning of Hernandez was alleviated by the district court's curative instruction.[1] The majority further deems the erroneous jury instruction concerning the proper proof of a conspiracy to be harmless error. Disagreeing on both points, I respectfully dissent.

The case against defendants turned in large part upon the testimony of Herman Hernandez. Hernandez played an integral role in the drug smuggling scheme, flying numerous plane loads of marijuana from the Bahamas to the United States. He testified that each time he landed with the contraband, defendant Nickerson and, on at least one occasion, co-defendant Hawkins arrived to unload the plane. The testimony constituted the only evidence placing either Hawkins or Nickerson in direct contact with the marijuana.

Defense counsel subjected Hernandez to a vigorous cross-examination. During cross, the witness made a number of statements that severely impugned his credibility. Hernandez admitted that he had been convicted of a felony[2] and had violated his bail terms by flying a plane to Colombia in an effort to obtain cocaine. When asked if he would "tell a lie" in return for money or early release from prison, the witness responded "of course." The cross-examination uncovered inconsistencies in Hernandez' testimony and demonstrated that his testimony conflicted with statements made by other government witnesses.

Hernandez also admitted receiving an inordinate amount of assistance from the Government, a possible indication of bias. He obtained immunity from all charges arising out of his 13 attempts to fly marijuana into the United States and his attempt to jump bail in South Carolina. The Government returned to him $10,000 originally forfeited and paid his wife $900 per month while he acted as an informant. Government officials also helped Hernandez regain his pilot's license, assisted him in obtaining placement in a halfway home and, when medical tests revealed the pres-

1. The question was so obviously prejudicial that it is difficult to comprehend how a United States prosecutor employed by the Justice Department with eight years of legal experience ever imagined that the question was proper. The record contains no justification for the inquiry and the prosecutor acknowledged that it was a "regret[able] ... blunder." Even counsel for the Government on appeal admitted that the question was indefensible.

Without actually charging bad faith on the part of the prosecutor, I note that Section 5.6(b) of the ABA Standards Relating to the Prosecution Function expressly prohibits a prosecutor from knowingly asking objectionable questions in the presence of the jury. In addition, prosecutors, as representatives of the United States, are generally expected to comply with the highest standards of dignity and propriety. *E.g., United States v. Somers*, 496 F.2d 723, 736–37 (3d Cir. 1974).

2. Hernandez was convicted of importing 33,000 pounds of marijuana into the United States. He received a five-year sentence.

ence of an opiate in his bloodstream, wrote letters on his behalf seeking leniency.[3]

On redirect examination, the prosecutor attempted to rehabilitate the witness. After establishing that Hernandez had testified in three prior trials, the prosecutor asked if the defendant in each prior trial had been convicted on the basis of his testimony. Hernandez responded in the affirmative. The question was blatantly improper.[4] The question and response had the effect of bolstering the witness' credibility by informing the jury that three previous juries had believed his testimony. Moreover, the jury may have inferred from the colloquy that the three prior trials involved codefendants in the same drug smuggling scheme at issue below.[5]

The district court acknowledged that the question was improper but refused to grant a mistrial. Instead, the court instructed the jury to disregard the question and render a verdict solely on the basis of the evidence adduced at trial. The trial judge did note that the question "may have prejudiced these jurors to the extent that we can't get a fair decision from them."

Generally, harm caused by the improper admission of evidence can be obviated by a curative instruction. *United States v. Ocanas*, 628 F.2d 353, 360 (5th Cir. 1980); *United States v. Smith*, 517 F.2d 710, 711 (5th Cir. 1975). Curative instructions, however, "are impotent to overcome those situations in which there is great risk that the jury will not or cannot abide by the judge's instructions to the detriment of the defendant's vital interests." *United States v. Levinson*, 405 F.2d 971, 988 (6th Cir. 1968); *accord*, *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968); *United States v. Miranda*, 593 F.2d 590 (5th Cir. 1979). Whether a curative instruction will alleviate the prejudice caused by the improper admission of evidence depends upon the facts and circumstances of each case. *E.g., United States v. Miranda, supra*, 593 F.2d 590 (improper use of codefendant's conviction in closing argument); *United States v. Coats*, 652 F.2d 1002 (D.C.Cir.1981) (improper use of defendant's prior convictions in closing argument); *United States v. Gullo*, 502 F.2d 759 (3d Cir. 1974) (improper use of codefendant's guilty plea during redirect examination of witness); *United States v. Camiel*, 519 F.Supp.

---

**3.** At least one other witness indicated that Hernandez was not a credible witness. The following colloquy occurred between Donald Stanton, Hernandez' business associate, and counsel for the defendant.

> ATTORNEY: Do you have an opinion, Mr. Stanton, as to the truth and veracity of Herman Hernandez, Jr., if he came to court and testified under oath? Just yes or no.
> STANTON: I would say yes.
> ATTORNEY: What is that opinion, Mr. Stanton?
> STANTON: Honestly, it wouldn't be very good.
> ATTORNEY: Do you know his reputation in the business community—
> STANTON: Yes.
> ATTORNEY: —for truth and veracity?
> STANTON: Yes.
> ATTORNEY: And what is that opinion, Mr. Stanton?
> STANTON: That is also not very good.
>       *   *   *   *   *   *
> ATTORNEY: Would you base any important decision in your life on the word of Herman Hernandez?
> STANTON: No, I wouldn't.

**4.** In a display of unanimity, defendants, the Government, the district court, and the judges on this panel agree that the question was improper.

**5.** During direct examination, Hernandez admitted supplying the government with information in only two cases: the Florida drug smuggling scheme involving Nickerson and Hawkins and a drug case in South Carolina. He further stated that he testified for the Government on three occasions, once in South Carolina and twice in Florida. The Florida trials took place in the courthouse where Nickerson and Hawkins were tried. These statements by Hernandez indicated that the two prior Florida trials involved other participants in the drug smuggling scheme at issue in Nickerson's and Hawkins' trial. Thus when the prosecutor brought out that Hernandez' testimony resulted in the conviction of defendants in all three prior cases, the jury may well have believed that the persons convicted were codefendants.

1238 (E.D.Pa.1981) (improper comments about credibility of defendant's testimony during closing argument). A court's analysis must focus on the effect of the improper evidence on the trial rather than the motive of the prosecutor, *Smith v. Phillips*, —— U.S. ——, —— & n.10, 102 S.Ct. 940, 947 & n.10, 71 L.Ed.2d 78 (1982), and any doubts concerning the possible prejudice caused by an improper question or statement should be "resolve[d] . . . in favor of the accused." *United States v. Miranda, supra,* 593 F.2d at 596.

The instant case turned almost entirely upon the credibility of Hernandez. By informing the jury that Hernandez' testimony resulted in other convictions, the prosecutor enhanced the witness' credibility. The trial judge did everything possible to alleviate the prejudice flowing from the improper question. Nonetheless, in light of the pivotal role played by Hernandez' credibility, I am of the view that no curative instruction could have dissipated the harm caused by the redirect examination.

Reversible error also occurred when the trial judge issued supplementary instructions to the jury. After returning from a five-day recess, the jurors expressed some confusion concerning the elements of proof necessary to establish a conspiracy. The jury submitted questions to the judge asking:

(1) If a defendant is "guilty of one overt act in Count 2 [conspiracy to import marijuana] is he considered guilty of all?"

(2) Is "one overt act in Count 2 sufficient to render [defendant] guilty of the entire act?"

Both questions indicate that the jurors were particularly concerned about whether a conspiracy could be established simply by proof of an overt act.

The trial judge discussed the questions with counsel and agreed that the appropriate response was to reread to the jury the portion of the instructions defining the elements of a conspiracy. Defense counsel sought to have the jury instructed that proof of an overt act alone is insufficient to establish a conspiracy. The trial judge refused the requested instruction. Instead he informed the jury of the elements of a conspiracy and explained the importance of an overt act by noting that an "overt act is a mere way of showing that a conspiracy existed. [The defendants] are not charged with overt acts themselves, but proving overt acts is a way of proving that the conspiracy existed." Defense counsel immediately objected to the charge. He noted that the jury might interpret the instructions to mean that a conspiracy would be established solely upon proof of an overt act. Defense counsel again asked the court to tell the jury that proof of an overt act alone is insufficient to establish a conspiracy and the trial judge again refused.

The majority concedes that the instruction was erroneous but views the error as harmless. The opinion summarily concludes that the instructions taken as a whole constitute an accurate recitation of the law. Unfortunately the majority totally ignores the events leading up to the supplemental and "clarifying" charge.

The questions sent to the trial judge demonstrated obvious confusion on the part of the jury with the relationship between proof of overt acts and proof of a conspiracy. Thus when reinstructed, the jury was particularly attuned to the instructions concerning overt acts. The trial judge's charge in effect informed the jurors that proof of an overt act amounted to proof of a conspiracy. Not only was the instruction a misstatement of the law,[6] the erroneous charge was *particularly* prejudicial in light of de-

---

**6.** To prove a conspiracy, the Government need not establish that the accused committed or participated in the commission of an overt act. *United States v. Diaz,* 655 F.2d 580, 584 (5th Cir. 1981); *United States v. Palacios,* 556 F.2d 1359, 1364 n.9 (5th Cir. 1977). Instead, the essential element of a conspiracy is an agree-

ment by two or more persons to violate the law. *United States v. Spradlen,* 662 F.2d 724, 727 (11th Cir. 1981). Thus the instruction that proof of an overt act constituted proof of a conspiracy was a clear misstatement of the law and the misstatement related to the basic question the Government was attempting to prove.

fendants' defense. Defendants in effect conceded that the requisite "overt acts" had occurred. Their entire defense revolved around the contention that Hawkins and Nickerson, although present at the scene when the overt acts were committed, never had knowledge of or actually participated in the conspiracy. It was crucial, therefore, for the jury to understand that proof of an overt act alone is insufficient to show a conspiracy. Instead the conspiracy count required proof beyond a reasonable doubt that the defendants willfully combined for an unlawful purpose. Accordingly, defendants were entitled to a new trial.

For the reasons stated herein, I respectfully dissent.