**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eusebio Whittaker BENT, Jose Compaz Cuerro, Ramon Antonio Pena Bello, Jose Gutierez, Victor Paredes, Victor Quinones, Robert P. Ybarra, Milton Brinkley Payne, Defendants-Appellants.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jason Newball STEELE,
Defendant-Appellant.**

**Nos. 81–5491, 81–5595
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

June 20, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 12, 1983.

David L. McGee, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Philip J. Padovano, Tallahassee, Fla. (Court-appointed), for Cuerro.

Roger D. Patterson, Panama City, Fla. (Court-appointed), for Bello.

L. Sanford Selvey, II, Tallahassee, Fla. (Court-appointed), for Gutierez.

Baya Harrison, III, Tallahassee, Fla. (Court-appointed), for Paredes.

William F. Wager, Jr., Panama City, Fla. (Court-appointed), for Quinones.

Robert J. Vossler, Asst. Federal Public Defender, Tallahassee, Fla. (Court-appointed), for Payne.

Thomas S. Keith, Asst. Federal Public Defender, Pensacola, Fla. (Court-appointed), for appellant Bent.

Roy L. Glass, Tampa, Fla. (Court-appointed), for Steele.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

PER CURIAM:

As part of a continuing undercover operation, several Drug Enforcement Administration (DEA) agents posed as a marijuana off-load crew available for hire. Sam and Dwight Ward, Darrell Prows, and Daniel McGuiness hired the crew to unload a shipment of marijuana that was to be brought by boat from South America. The details of the off-load operation were discussed at several meetings held during October 1980 to January 1981.

Originally, the shipment was scheduled to reach Panama City in late November, but the boat encountered mechanical difficulties, drifted into Colombian waters, and was seized by Colombian authorities. The crewmen—identified to the agents by Sam Ward as Robert Ybarra, the captain; "Topper," a nickname for Milton Payne; and a Mexican whose name was not divulged—were jailed in Colombia.

On December 31, 1980, the Ward brothers informed the agents that Prows had flown to Colombia and had bribed a Colombian official with $150,000.00 to secure the crew's release. The boat sailed on December 25th, according to the Wards, with an additional crew of six Colombians. These six crewmen, the Wards promised, would take the boat back to Colombia, thus establishing "a continuing Mother ship operation between Colombia and the United States."

Two days later, McGuiness provided the agents with loran charts and pointed to the coordinates 46800/14000 as the location for the rendezvous between the boat and the off-load crew. Prows returned from Colombia on January 3rd, and stated that the boat would arrive at the prearranged location the next day. The DEA agents forwarded this information, along with a description of the suspect vessel, to the Coast Guard.

On January 4th, the Coast Guard spotted a boat matching the description of the suspect vessel in the vicinity of loran coordinates 46800/14000. The Coast Guard stopped and boarded the boat, later identified as the "Tiny Smith," to make a safety and documentation inspection pursuant to 14 U.S.C. § 89(a). While preparing to make the inspection, the officers discovered the bales of marijuana in the main fish hold. The nine appellants were then arrested. A subsequent search of the pilot house revealed a piece of stationery from a Co-

lombian hotel bearing the numbers 46800 and 14000.

The appellants were charged with (1) possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 955; (2) conspiracy to possess marijuana in excess of 1,000 pounds with intent to distribute, in violation of 21 U.S.C. §§ 841 and 846; and (3) attempted importation of marijuana, in violation of 21 U.S.C. §§ 952 and 963. Appellants Ybarra, Payne, Gutierez, Bello, Steele, and Paredes were found guilty of all three counts. Appellants Bent, Cuerro, and Quinones were found guilty only of the first count.

All nine appellants challenge their convictions on a multitude of grounds. Finding no errors, we affirm the convictions.

Appellants first contend that the trial court erred in denying their motion to suppress the evidence seized aboard the "Tiny Smith" where probable cause to search and ample time to obtain a search warrant were coupled with the complete absence of exigent circumstances. The trial court found that the appellants did not have a reasonable expectation of privacy in the hold of the ship and therefore, that they did not have standing to assert a fourth amendment challenge. The court also ruled that under 14 U.S.C. § 89(a) the search was permissible.

■ The former Fifth Circuit has held on numerous occasions that:

> neither captain nor crew has a legitimate expectation of privacy protected by the fourth amendment in an area which is subject to the common access of those legitimately aboard the vessel. The ice hold or fish hold, where the Coast Guard has statutory and regulatory authority to search, is such an area.

*United States v. Freeman,* 660 F.2d 1030, 1034 (5th Cir.1981) (Unit B) (citing *United States v. Willis,* 639 F.2d 1335, 1337 (5th Cir.1981); *United States v. DeWeese,* 632 F.2d 1267, 1270–71 (5th Cir.1980), *cert. denied,* 454 U.S. 358, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981)); *see also* 16 U.S.C. § 971(f) (Coast Guard may search fish hold). We

are bound by decisions of the former Fifth Circuit rendered prior to October 1, 1981, *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), and by decisions of Unit B of the former Fifth Circuit rendered after that date. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir. 1982). Thus, the district court properly ruled that appellants failed to demonstrate a reasonable expectation of privacy in the hold of the shrimper.

■ The trial court's alternative holding—that 14 U.S.C. § 89(a) provided statutory authority for the search—is also correct. In *United States v. Warren,* 578 F.2d 1058 (5th Cir.1978) (en banc), the court held that the Coast Guard may stop and board a United States vessel in international waters and conduct a safety and documentation inspection without any suspicion of wrongdoing. *See* 14 U.S.C. § 89(a). The district court properly denied the motion to suppress the evidence seized.

■ Appellants Ybarra, Gutierez, Quinones, Steele, and Cuerro argue that the trial judge impermissibly admitted statements of their alleged co-conspirators in violation of *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Although the court did not hold a separate *James* hearing on the admissibility of the alleged co-conspirators' statements, it did require that the statements be linked to independent evidence of the existence of the conspiracy. The failure to conduct a *James* hearing is not, without more, grounds for reversal. *United States v. Miller,* 664 F.2d 826, 827–28 (11th Cir.1981). We cannot reverse the district court's decision to admit the evidence unless that decision was clearly erroneous. *United States v. Bulman,* 667 F.2d 1374, 1379 (11th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). Here, the decision was not clearly erroneous. There was substantial independent evidence of the existence of the conspiracy; hence the court's initial determination to admit the evidence was correct. Furthermore, appellants failed to move at the close of the evidence

for reconsideration of that tentative decision, as is their responsibility under *James*.

■ The district court denied several of the appellants' motions for severance and/or mistrial. Bent, Cuerro, Quinones, and Ybarra claim they were prejudiced by what they term the "spill-over" effect of the extrinsic offense evidence that was admitted against several of their co-defendants. The grant or denial of a motion for severance is committed to the sound discretion of the trial judge and will not be reversed except upon a showing of clear abuse of discretion. *United States v. Nickerson*, 669 F.2d 1016, 1022 (5th Cir.1982) (Unit B). No such showing has been made here. At several points in the trial the district judge gave cautionary instructions on the permissible uses of the extrinsic offense evidence. No such evidence was offered against Bent, Cuerro, and Quinones, who were acquitted of Counts II and III. The government did offer extrinsic offense evidence against Paredes, Steele, and Bello, who were convicted on all three counts. Thus, it is apparent that the jury was able to distinguish varying degrees of proof among the co-defendants. These appellants were not prejudiced as a result of the introduction of extrinsic evidence against their co-defendants.

■ Appellant Steele challenges the admission of extrinsic evidence that was offered as proof of his unlawful intent. The Government introduced evidence of Steele's prior involvement in the importation of marijuana. Steele contends that this was highly prejudicial, thus depriving him of his due process right to a fair trial. We disagree. In *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the Fifth Circuit set forth a two-pronged test to determine the admissibility of extrinsic offense evidence. First, the evidence must be relevant to an issue other than the defendant's character. Second, the probative value of the evidence must not be substantially outweighed by its inherent prejudicial nature, and the other requirements of Fed.R.Evid. 403 must be

met. *See United States v. Tuasil*, 672 F.2d 879 (11th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 110, 74 L.Ed.2d 98 (1982); *United States v. Dothard*, 666 F.2d 498 (11th Cir. 1982).

Relevancy in this context, according to the *Beechum* court, is a function of the similarity of the two offenses. Here, the two offenses were the same; intent was certainly at issue in both. Thus, the evidence of Steele's prior offense was relevant to the issue of intent here.

■ The balancing of the probative value of the evidence against its prejudicial effects is left to the sound discretion of the trial judge. *United States v. Thevis*, 665 F.2d 616, 633–34 (5th Cir.) (Unit B), *cert. denied*, 456 U.S. 1008, ——, 102 S.Ct. 2300, 3489, 73 L.Ed.2d 1303, 1370 (1982). There was no abuse of discretion in the decision to admit the evidence. The four factors cited by the *Beechum* court weighed in favor of allowing the evidence, and the district judge gave cautionary instructions limiting consideration of the extrinsic offense evidence to the question of Steele's intent. There was no reversible error.

■ Appellant Quinones testified in his own defense, and objected when, on cross-examination, the prosecutor asked him about his alleged involvement in a 1979 drug smuggling scheme. Quinones argues this was clearly beyond the scope of cross-examination, but we disagree. Portions of Quinones' direct testimony concerned his previous voyages to the United States and implied that they were for legitimate reasons. This opened the door to impeachment on cross-examination. The Government's questions on cross-examination were within the scope of direct examination, and the trial court did not commit error by allowing the questions. *See United States v. Tolliver*, 665 F.2d 1005, 1008 (11th Cir.) (trial court has broad discretion under Fed.R. Evid. 611(b) to determine permissible scope of cross-examination and will not be reversed except for clear abuse of that discretion), *cert. denied*, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982).

All appellants assert as error the judge's supplemental jury instruction given in response to the jury's question concerning the possession count. After retiring for deliberations, the jury posed the following question to the trial judge:

> Could a defendant be considered guilty of possession if he found out about the controlled substance aboard the boat only after the boat had departed Colombia, but had no knowledge of same prior to sailing?

Record at 850–51. The judge conferred with counsel in his chambers and formulated this response:

> Now, the answer to the question that the jury has, as stated, is no. But if you were to find thereafter, or if you thereafter find, beyond a reasonable doubt that the person knowingly and intentionally decided to join the alleged conspiracy or aid and abet the other alleged crimes, the answer is yes. So it's two-fold. It's a yes and no proposition. It's not a question that can be answered yes or no. It's got to be qualified.

Record at 860. Appellants argue that the response should have been confined to answering in the negative. The response as given, they claim, was overbroad and therefore confusing. The standard of review that must be applied in this situation is whether, viewing the original and supplemental instructions as a whole, the combined instructions accurately represented the law. *United States v. Nickerson,* 669 F.2d 1016, 1021 (5th Cir.1982) (Unit B). In this instance, the trial judge properly qualified his answers to the jury. A conspirator may be held liable for the substantive crimes committed by his co-conspirators in furtherance of the conspiracy. *See United States v. Raffone,* 693 F.2d 1343, 1346 (11th Cir.1982). Thus, if the individual who originally knew nothing of the conspiracy subsequently joined and voluntarily participated in the unlawful scheme, and he or his co-conspirators possessed the contraband with the intent to distribute, he could be properly found guilty of the possession count. The judge's response was correct.

Appellants direct their main challenge to the sufficiency of the evidence against them, contending that the Government showed nothing more than mere presence aboard the "Tiny Smith." In *United States v. Bell,* 678 F.2d 547 (5th Cir.) (Unit B en banc), *aff'd on other grounds,* —— U.S. ——, 103 S.Ct. 2398, —— L.Ed.2d —— (1982), the standard governing sufficiency of the evidence was set forth as follows:

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*Id.* at 549 (footnote omitted). Viewing the evidence in the light most favorable to the Government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we believe that a reasonable jury could have found that the evidence in this case established guilt beyond a reasonable doubt.

The DEA agents testified that the Wards informed them that the six Colombian crewmen were going to establish a continuing link to the source of the drugs by taking the boat back to Colombia. The agents were privy to almost every detail of the off-load operation, including the number of crewmen, and the exact time and location of the boat's arrival off the coast of Panama City. At least two of the appellants were identified by name in the co-conspirators' discussions with the agents. Evidence of extrinsic offense evidence was admitted against some of the appellants. From this, the jury could conclude that, as to these appellants, the requisite unlawful intent was present.

The jury could have reasonably concluded that the evidence established the appellants' guilt beyond a reasonable doubt. The verdicts returned demonstrate that the jury was quite able to discriminate between offenses and appellants. Under the *Bell* stan-

dard, the evidence in this case was sufficient to support the convictions.

We have reviewed appellants' other contentions and find them without merit. Their convictions are AFFIRMED.