815 F.2d 706
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John T. KILPATRICK and William A. Todd, Defendants-Appellants.
 Nos. 85-5993 and 85-6012.
 United States Court of Appeals, Sixth Circuit.
 March 2, 1987.
 
 Before KENNEDY, JONES and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 William Todd and John Kilpatrick appeal their convictions for conspiracy, 18 U.S.C. Sec. 371 (1982), and for mail and wire fraud, 18 U.S.C. Secs. 1341-1343 (1982). Because we find no error in the district court's administration of the trial, we affirm the convictions.
 
 
 2
 Briefly outlining the facts in this case, Sami Eisbart (a nonappellant defendant) in 1979 devised a scheme to defraud investors through the sale of "deferred delivery coal contracts." Eisbart's plan was to convince potential investors that coal was a commodity, and that a coal futures contract could be bought and sold just like gold, silver, corn or wheat. The "catch" is that coal cannot be traded like a commodity, and so a "deferred delivery coal contract" is worthless to an investor because no one will buy it from him or her.
 
 
 3
 The owner of a securities company was contacted to put together financing for this scheme. Appellant Kilpatrick was the manager of that securities company. Kilpatrick subsequently became a 25 percent shareholder in the "coal futures" venture, which was incorporated as the "National Coal Exchange." Kilpatrick became actively involved in the business--training salesmen, fielding customer phone calls, and the like.
 
 
 4
 By 1980, the Commodities Futures Trading Commission had filed suit to enjoin the sale of the coal contracts. While the suit was pending, the National Coal Exchange continued to sell contracts. The company was based in Memphis, and the Memphis Better Business Bureau had also begun to complain. At this time, it was suggested that appellant Todd be hired as president of the National Coal Exchange. Todd was a lawyer who had previously been a judge.
 
 
 5
 As president of the National Coal Exchange, Todd was actively involved in its management. He accompanied employees like Kilpatrick on sales trips. He spoke to some customers on the phone, advising them not to worry about their inability to sell their contracts. He hired an employee to convince customers to purchase "extensions" of their contracts. He admits on appeal that while he was president he became aware of his salesmen's misrepresentations to customers.
 
 
 6
 When the FBI began investigating the operation of the National Coal Exchange during Todd's presidency, records were moved and bank accounts were transferred. Finally, in August 1981, the Commodities and Futures Trade Commission was granted an injunction against the National Coal Exchange. By this time the scheme had received over six million dollars from defrauded investors.
 
 
 7
 Defendants Todd, Kilpatrick and Eisbart were indicted along with three others on 95 counts of conspiracy, mail fraud and wire fraud. Todd, Kilpatrick and Eisbart were tried together on their pleas of not guilty. Eisbart fled during trial. Todd was found guilty of conspiracy and 16 counts of mail and wire fraud. Kilpatrick was found guilty on all counts.
 
 
 8
 Todd and Kilpatrick argue on appeal that a number of errors were made in their trial. Todd first argues that there was insufficient evidence to support his conviction. In reviewing the sufficiency of the evidence, the standard of review is whether the relevant evidence could be accepted by a jury as adequate and sufficient to support the conclusion of guilt beyond a reasonable doubt. United States v. Strong, 702 F.2d 97, 99 (6th Cir.1983). The court must view the evidence, and all reasonable inferences from the evidence, in the light most favorable to the government. United States v. Gibson, 675 F.2d 825, 829 (6th Cir.), cert. denied, 459 U.S. 972 (1982). After a careful review of the record in this case, we conclude that there was ample evidence to support the jury's finding of Todd's guilt. In making this determination, Todd's position as president of a company set up to defraud investors is especially telling. See, e.g., United States v. West, 549 F.2d 545, 551 (8th Cir.), cert. denied, 430 U.S. 956 (1977).
 
 
 9
 Both Todd and Kilpatrick next argue that the district court should have granted their motion for mistrial based upon a single unanswered question by the prosecution on cross-examination of defendant Todd. The prosecution had been asking Todd if he could name any customers who had not been defrauded. When Todd could not recall any names but insisted that such satisfied customers existed, the prosecution asked whether any of those customers had been subpoenaed. The defense objected before Todd could answer, and the district court sustained the objection. The defense approached the bench and asked for a mistrial, which the district court denied. The district court did, however, immediately give the jury a curative instruction, telling them that the government has the burden of proof throughout the case to prove the offense charged. Thus, any prejudicial effect of the allegedly improper question was eliminated, and the district court did not abuse its discretion in denying a mistrial.
 
 
 10
 Todd and Kilpatrick also allege that the district court abused its discretion in denying their motions for severance from defendant Eisbart. They base their argument on the prejudice to them which allegedly arose from Eisbart's insistence on representing himself pro se. We have searched the record and find no evidence of the prejudice required to support the severance of defendants who have been jointly indicted. See, e.g., United States v. Stull, 743 F.2d 439, 446-47 (6th Cir.1984), cert. denied 470 U.S. 1062 (1985).
 
 
 11
 Todd argues that a mistrial should have been granted on the basis of prosecutorial misconduct. This alleged misconduct was comprised of the question concerning satisfied customers, discussed supra, and a reference to Todd as being "back in business again" with a man Todd had previously called a liar and an enemy. Even if these statements had been inappropriate, they did not constitute the sort of persistent and pronounced prosecutorial misconduct that would justify a mistrial. See, e.g., United States v. Nickerson, 669 F.2d 1016, 1020 (5th Cir.1982).
 
 
 12
 Todd contends that evidence concerning a 1983 oil and gas venture for which he was the attorney should not have been admitted. The evidence was relevant because a chief participant in the oil and gas venture was a man named Keller who allegedly lied to Todd concerning aspects of the National Coal Exchange. Thus, the evidence of their later working together was admitted to impeach the credibility of Todd's assertion that Keller's previous lies prevented Todd from knowing the fraudulent nature of the National Coal Exchange. The trial court did not abuse its discretion in admitting this evidence.
 
 
 13
 Finally, Todd and Kilpatrick argue that their right to a fair trial was violated by excusing from the jury pool those people who had vacation plans. We find this argument to be meritless.
 
 
 14
 Accordingly, we AFFIRM the district court.