891 So.2d 1151 (2005)
STATE of Florida, Appellant,
v.
Christopher THOMPKINS, Appellee.
No. 4D04-3708.
District Court of Appeal of Florida, Fourth District.
January 26, 2005.
*1152 Charles J. Crist, Jr., Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellant.
Charles I. Kaplan of the Law Offices of Kaplan & Singhal, P.A., Fort Lauderdale, for appellee.
KLEIN, J.
The state seeks certiorari review of a pretrial ruling that the result of a polygraph test given to a victim witness would be admitted in evidence. The test indicated that the testimony that the defendant had sexually assaulted her was not truthful. We have jurisdiction under State v. Pettis, 520 So.2d 250 (Fla.1988), and grant the petition.
The trial court entered the order after holding a hearing under Frye v. United States, 293 F. 1013 (D.C.Cir.1923). Not long before that, the third district had certified as a question of great public importance the admissibility of polygraph results in State v. Narval Hardware, 868 So.2d 574 (Fla. 3d DCA 2004). Subsequently, however, our supreme court declined to review the certified question. Hardware v. State, 885 So.2d 387 (Fla.2004).
In Hardware the third district quashed an order of the trial court setting a Frye hearing to determine the admissibility of the polygraph result. The third district apparently concluded that because our supreme court had held that these tests were inadmissible, Davis v. State, 520 So.2d 572 (Fla.1988), trial courts should not go so far as conducting a Frye hearing. We disagree. First, the fact that this test was not scientifically reliable in 1988, when Davis was decided, does not mean that it will never gain sufficient scientific recognition in the future. Second, we think that the Florida Supreme Court is more likely to reconsider the polygraph in a case in which there has been a Frye hearing establishing that it has been accepted scientifically.
In this case the polygraph proponent did not establish scientific reliability under Frye. The only testimony was from two people who earn a living by giving polygraph tests. Frye requires more than the testimony of an expert who has a personal stake in the theory or is prone to an institutional bias. Ramirez v. State, 810 So.2d 836, 844 n. 13 (Fla.2001). As Ramirez explains:
[G]eneral scientific recognition requires the testimony of impartial experts or scientists. It is this independent and impartial proof of general scientific acceptability that provides the necessary Frye foundation.
Id. at 851. In Kaminski v. State, 63 So.2d 339 (Fla.1952), our supreme court quoted from Frye as follows:
We think the systolic blood pressure deception test has not yet gained such *1153 standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made. Frye v. United States, 54 App.D.C. 46, 293 F. 1013, 1014, 34 A.L.R. 145.
Kaminski, 63 So.2d at 340. See U.S. v. Alexander, 526 F.2d 161, 164 n. 6 (8th Cir.1975) ("Some commentators have posited the argument that the polygraph need only attain general acceptance among the polygraph operators themselves to satisfy the test for admissibility.... This position must be rejected.... Experts in neurology, psychiatry and physiology may offer needed enlightenment upon the basic premises of polygraphy.").
The testimony in this record, which came only from persons who administer polygraph tests, is insufficient to establish the general scientific recognition required by Frye as interpreted by Kaminski and Ramirez.
The defendant relies heavily on United States v. Piccinonna, 885 F.2d 1529 (11th Cir.1989), an en banc opinion of the eleventh circuit in which the majority receded from its per se rule precluding admissibility of polygraph tests. We are unable to determine from the majority opinion in Piccinonna if there had been a Frye hearing in which experts had testified as to the general acceptance of the polygraph in the scientific community. Judge Johnson, joined by three other members of the court, wrote a dissent, citing a substantial amount of information to support his point that the scientific community "remains sharply divided on the reliability of the polygraph." 885 F.2d at 1537 (Johnson, J. dissenting).
Of more recent vintage than Piccinonna is United States v. Scheffer, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), in which the issue was whether, in a military court marshal proceeding, a rule excluding polygraph evidence violates the Sixth Amendment right to present a defense under Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In an eight-to-one decision the Court held that the rule did not violate the defendant's constitutional rights. That opinion also cites a substantial amount of information leading the Court to conclude that "the scientific community remains extremely polarized about the reliability of polygraph techniques." Id. 118 S.Ct. at 1265. Even Justice Stevens, the sole dissenter, appeared to recognize that polygraph evidence would be admissible only in courts which followed Daubert v. Merrill-Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), Scheffer, 523 U.S. at 322, 118 S.Ct. 1261 (Stevens, J., dissenting).
We grant the petition and quash the order admitting the polygraph test results.
WARNER and TAYLOR, JJ., concur.