[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13486

Non-Argument Calendar

_____

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

*versus*

ANGELO A. ALLECA, et al.,

Defendants,

CARRIE MISTINA,

Intervenor-Appellant,

2                    Opinion of the Court                    21-13486

ROBERT D. TERRY, ESQ.,

                                                Receiver-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:12-cv-03261-ELR

_____

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Carrie Mistina appeals the district court's order voiding a pre-receivership transfer from the receivership entity to Mistina as a constructively fraudulent conveyance. The court concluded that the exchange was not supported by reasonably equivalent value because Mistina provided only $30,000 for a revenue stream worth up to $225,000. Mistina maintains that the value given by her $30,000 payment was more than reasonably equivalent because the money was used to pay the premium on an errors and omissions insurance policy, which ultimately paid out nearly $1.5 million to the receivership estate. She also raises several procedural matters. After careful review, we reject Mistina's procedural arguments, but we vacate the district court's constructive-fraud determination and remand for further proceedings.

## I.

In September 2012, the Securities and Exchange Commission filed a receivership action alleging that Angelo Alleca was operating a Ponzi scheme through several of his companies, including Summit Wealth Management, Inc. ("Summit"). The district court appointed a receiver, Robert D. Terry (the "Receiver"), and authorized him to recover and secure assets belonging to Summit, among other things. The court also ordered a stay of all civil litigation involving any receivership property or entities until further order of the court, and it tolled any applicable statute of limitations for claims asserted by the Receiver while the stay order remained in effect.

As relevant here, the Receiver alleged that a pre-receivership exchange between Summit and Mistina, Summit's Chief Financial Officer, was fraudulent and therefore voidable. The exchange concerned an August 2011 agreement between Summit and a third-party, Alexandria Capital LLC, under which Summit would receive payments on an annual basis beginning in October 2012 based on fees generated from certain investment accounts (the "Note"). In August 2012, Mistina paid Summit $30,000 of her personal funds in exchange for the right to receive the four annual payments due Summit under the Note, which had an estimated value of between $130,000 and $225,000.

Mistina filed a claim for $225,000 in the receivership action and otherwise asserted her ownership of the Note and contested the Receiver's assertion that the transfer was fraudulent. Although

the Receiver repeatedly offered his view that the transfer was fraudulent, he never sought to prove the matter to the district court, despite indicating on multiple occasions that he would do so. Instead, he simply treated the assets as part of the receivership estate—i.e., he treated the transfer as a fraudulent conveyance—for purposes of the distribution plan, which the district court ultimately approved in September 2017.

On appeal, we vacated and remanded for further proceedings, holding that these procedures denied Mistina due process. *Sec. & Exch. Comm'n v. Terry*, 833 F. App'x 229, 234–35 (11th Cir. 2020) (quotation marks omitted). We stated that district courts in receivership cases "may use so-called 'summary proceedings,' which promote judicial efficiency, so long as the procedure provides claimants with due process." *Id.* at 232. But we explained that "the issue of whether a pre-receivership transfer was fraudulent 'required an evidentiary hearing' where the claimants could 'present and argue their facts' and 'rebut the characterization of the transfer and present affirmative defenses.'" *Id.* at 233, 235 (quoting *Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1568 (11th Cir. 1992)). Because Mistina was not afforded those minimum procedures, we remanded with instructions to give her a "full and fair opportunity" to rebut the characterization of the transfer before she was deprived of her property interest in the Note. *Id.* at 235.

On remand, the district court held an evidentiary hearing after a period of limited discovery. Both the Receiver and Mistina

testified at the hearing, and the parties offered various exhibits in evidence.

At the evidentiary hearing, Mistina testified about the circumstances of the transfer. She explained that Alleca, Summit's President and CEO, had proposed assigning the Note to her in exchange for $30,000 of her personal funds because the premium for Summit's $3 million errors and omission policy (the "E&O policy") was due and Summit was short on cash. After transferring $30,000 of her personal funds to Summit, Mistina then promptly paid the approximately $37,000 premium for the E&O policy out of Summit's account.

The other evidence largely confirmed Mistina's account. Bank records showed that, on the date of the Note assignment in August 2012, before the premium was paid, Summit's account had a balance of $20,646.42. In addition, the Receiver acknowledged that a "substantial portion" of Mistina's funds were used to pay the insurance premium, even if a precise amount could not be determined, and that, "but for that money, the insurance premium . . . would not have been made." Ultimately, the insurer paid nearly $1.5 million under the policy to the receivership estate. That insurance payment accounted for roughly 80% of the total assets collected by the Receiver.

The district court concluded that the transfer of the Note to Mistina was a fraudulent conveyance based on "constructive" fraud under O.C.G.A. § 18-2-74(a)(2). The court reasoned that the receipt of $30,000 by Summit was not reasonably equivalent value

for selling an income stream of up to $225,000. The court rejected Mistina's claim that Summit received the benefits of the E&O policy. The court was "not persuaded that the value of the coverage amount for the errors and omissions insurance policy can be attributed to Mistina" because there were other funds in Summit's account at the time the premium was paid, and it was not "Mistina's deposit alone that paid the insurance premium." The court also found that Summit was insolvent at the time of the transfer, which Mistina does not dispute. Concluding that the transfer constituted a constructive fraud, the court did not address whether the transfer was voidable based on "actual" fraud.

Having resolved Mistina's objection, the district court went on to approve a prior settlement agreement between the Receiver and Alexandria, under which Alexandria agreed to pay $77,000 to the receivership estate in exchange for the entry of a bar order foreclosing future claims against it based on the Note. Mistina now appeals, raising procedural and substantive arguments.

## II.

We start with Mistina's procedural arguments. First, Mistina contends that the Receiver's right to bring a fraudulent-transfer action against her expired on August 21, 2016, four years after the transfer was made. She maintains that the tolling provision in the order appointing the receiver is unlawful as an indefinite stay. Second, she contends that, even aside from the limitations period, the claim was barred by the doctrine of laches. The parties

agree that these issues are governed by Georgia law, where the alleged fraudulent transfer occurred.

## A.    Statute of Limitations

A cause of action with respect to a fraudulent transfer or obligation generally must be brought "within four years after the transfer was made or the obligation was incurred." O.C.G.A. § 18-2-79; *see* O.C.G.A. § 18-2-74. Because the alleged fraudulent transfer occurred on August 21, 2012, the limitations period ordinarily would have expired four years later, on August 21, 2016.

In November 2012, though, the district court entered a Modified Receivership Order which expressly tolled all statutes of limitations that would otherwise run against the Receiver regarding claims on behalf of the receivership entities against third persons or parties "until further Order of this Court." Mistina does not dispute that, if the tolling provision applies, the statute of limitations would not bar reaching the merits of the fraudulent transfer issue.

Mistina's claim that the tolling provision is invalid is unpersuasive. She cites caselaw from this Circuit holding that an indefinite stay order pending related litigation is invalid.[1] *See Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264–65 (11th Cir.

---

[1] Mistina also relies on a case involving a statutory provision authorizing the FDIC to request of a stay of an action in which it appears as a receiver, but that provision has no application here. *See F.D.I.C. v. Lacentra Trucking, Inc.*, 157 F.3d 1292, 1301–03 (11th Cir. 1998). Nor do ordinary principles of equitable tolling. *See Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006).

2000) (vacating an order staying proceedings in a case as "indefinite" where it remained in effect until litigation in Bahamian courts concluded); *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288–89 (11th Cir. 1982) (vacating a stay pending a determination by a special US-Iran Claims Tribunal). But none of the cases she cites addressed the validity of a provision tolling applicable statutes of limitations pending a receivership. Nor can we say that the tolling provision was "indefinite in scope." Tolling remained in effect pending further order of the court, so it was bounded by the receivership itself and subject to court oversight.

Moreover, the fraudulent-transfer issue was properly resolved in the context of the receivership, and so was appropriately subject to tolling. Mistina submitted a claim for $225,000 in the receivership action, "in turn submitting [herself] to the jurisdiction of the receivership." *Sec. & Exch. Comm'n v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1345 (11th Cir. 2017). And the Receiver purported to resolve the fraudulent-transfer claim as part of the ordinary claims process, even though we ultimately found that procedure to be inadequate.

What's more, the district court was permitted to use summary procedures to adjudicate Mistina's interest in the Note as part of the receivership, so long as she received a full and fair opportunity to "present and argue [her] facts" and "rebut the characterization of the transfer [as fraudulent]." *Terry*, 833 F. App'x at 233; *see Elliott*, 953 F.2d at 1567–68 (approving the use of summary procedures to resolve whether a transfer was fraudulent). Mistina

does not dispute that she was afforded such a meaningful opportunity on remand. In these circumstances, no separate action or complaint was required.

For these reasons, we agree with the district court that Mistina has not presented grounds to strike the tolling provision or to conclude that the statute of limitations otherwise barred the Receiver from proving a fraudulent transfer in relation to the Note.

## B.    Laches

Under the doctrine of laches, "courts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." O.C.G.A. § 9-3-3. Laches generally requires "a delay in asserting a right or claim, that the delay was not excusable and that there was undue prejudice to the party against whom the claim is asserted." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corp. of Eng'rs*, 781 F.3d 1271, 1283 (11th Cir. 2015); *see Hall v. Trubey*, 498 S.E.2d 258, 261 (Ga. 1998) (citing various factors relevant to laches, including "the length of the delay in the claimant's assertion of rights, the sufficiency of the excuse for a delay, the loss of evidence on disputed matters, [and] the opportunity for the claimant to have acted sooner").

The district court concluded that the doctrine of laches "was unavailable as a defense in [an] action brought by a court-appointed Receiver." The court's conclusion appears to extend our precedent holding that the defense of laches "cannot be asserted against the

United States in its sovereign capacity to enforce a public right or to protect the public interest." *United States v. Arrow Transp. Co.*, 658 F.2d 392, 394 (5th Cir. Unit B Oct. 8, 1981).[2] We are doubtful that an extension of that principle is warranted for the Receiver, who stood in the shoes of a private company and "obtain[ed] only the rights of action and remedies that were possessed by" that company. *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1306 (11th Cir. 2020). Because a private company would be subject to laches as a litigant in its own right, it seems that the same rule should apply to a court-appointed receiver acting on behalf of that company.

We need not resolve this issue, however, because we cannot say that applying laches here was warranted even assuming it could apply to a court-appointed receiver. There was, to be sure, some delay and lack of diligence in the Receiver's actions, but not nearly to the extent claimed by Mistina, and delay alone is insufficient where the claim was raised within the applicable limitations period. *Cowen v. Clayton Cnty.*, 832 S.E.2d 819, 823 (Ga. 2019); *Vincent v. Longwater*, 538 S.E.2d 164, 166 (Ga. Ct. App. 2000).

Moreover, the record shows that the Receiver consistently maintained that the transfer of the Note was fraudulent, and he purported to address that issue, implicitly at least, in the distribution plan, which allowed Mistina's claim for $30,000 only and to

---

[2] Decisions by Unit B of the former Fifth Circuit rendered after October 1, 1981, bind us under our prior-precedent rule. *United States v. Bent*, 707 F.2d 1190, 1193 (11th Cir. 1983).

which Mistina filed no objections. Although we ultimately con-cluded that the procedures used by the Receiver were inadequate, the Receiver's actions do not show that he slept on his rights. In addition, Mistina was well aware of the Receiver's position, and she has made no showing that her defense was impaired by the delay in receiving an evidentiary hearing. While she incurred additional litigation costs to obtain the evidentiary hearing to which she was entitled, that harm stemmed primarily from a procedural defect, not delay.

For these reasons, the doctrine of laches did not prevent the Receiver from seeking to set aside the transfer of the Note.

## III.

Turning to the merits of the fraudulent-transfer issue, we re-view legal issues *de novo* and factual findings for clear error. *Nord-berg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir. 1990). Whether reasonably equivalent value "has been given for a transfer is largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts." *Id.* (quotation marks omitted).

Fraudulent-transfer provisions like those in Georgia's Uni-form Fraudulent Transfer Act (UFTA)[3] are designed "to protect

---

[3] The UFTA has since been amended and is now called the Uniform Voidable Transactions Act. *Agricommodities, Inc. v. Moore*, 854 S.E.2d 781, 783 & n.5 (Ga. Ct. App. 2021); Ga. L. 2015, pp. 996, § 4A (effective July 1, 2015). We need

12                  Opinion of the Court                21-13486

creditors against the depletion" of a debtor's estate. *Gen. Elec. Credit Corp. of Tenn. v. Murphy (In re Rodriguez)*, 895 F.2d 725, 727 (11th Cir.1990); *Tuggle v. Ameris Bank*, 872 S.E.2d 1, 5–6 (Ga. Ct. App. 2022) (stating that "the UFTA's purpose is to protect creditors from the depletion of a debtor's estate to the prejudice of unsecured creditors"). These provisions operate to require a transferee to return certain transfers to the estate.

Under the UFTA, a transfer made by a debtor is voidable if the debtor made the transfer either with intent to delay or defraud, or "without receiving reasonably equivalent value in exchange for the transfer" when the debtor was insolvent. O.C.G.A. § 18-2-74(a)(1), (2) (2016). Unlike "actual" fraud under § 18-2-74(a)(1), "constructive" fraud under § 18-2-74(a)(2) does not depend on the intent behind the transfer or the knowledge of the parties to the transfer. *See Agricommodities, Inc. v. Moore*, 854 S.E.2d 781, 783 (Ga. Ct. App. 2021) ("[T]he fact that the transferee had no knowledge of the debtor's insolvency is irrelevant under this code section."). There is no dispute here that Summit was insolvent at the time it transferred the Note to Mistina, so the only issue is whether it received "reasonably equivalent value" in exchange.

The party seeking to void a transfer—here, the Receiver—bears the burden of proving the lack of reasonably equivalent value. *See In re Chase & Sanborn Corp.*, 904 F.2d at 593–94 ("The

---

not consider the amendments because they do not apply to transfers before July 1, 2015, and do not appear to be relevant in any case. *See id.*

burden of proving lack of 'reasonably equivalent value' . . . rests on the trustee challenging the transfer."); *Agricommodities*, 854 854 S.E.2d at 783 (the party asserting constructive fraud "must show that the debtor did not receive 'reasonably equivalent value' for the exchange). "Reasonably equivalent in value does not mean dollar-for-dollar equivalence." *Estate of Jackson v. Schron*, 873 F.3d 1325, 1344 (11th Cir. 2017) (quotation marks omitted). And constructive-fraud provisions generally "do[] not authorize voiding a transfer which confers an economic benefit upon the debtor, either directly or indirectly." *In re Rodriguez*, 895 F.2d at 727 (addressing the constructive fraud provision at 11 U.S.C. § 548(a)(2)). "In such a situation, the debtor's net worth has been preserved, and the interests of the creditors will not have been injured by the transfer." *Id.* (quotation marks omitted).

The district court found that the transfer of the Note was constructively fraudulent because the value received by Summit ($30,000 in cash) in the exchange was not reasonably equivalent to the value given (a revenue stream up to $225,000). In other words, the court found—and we agree—that Summit did not *directly* receive reasonably equivalent value from the transfer.

But Mistina proffered evidence of an *indirect* benefit of the transfer. According to Mistina, Summit transferred its right to receive the deferred annual payments under the Note because it needed immediate funds to pay the premium on its $3 million E&O policy, which it promptly paid upon receiving the $30,000. The Receiver does not appear to dispute that such an insurance policy

would be of substantial benefit to a company ostensibly offering investment advice. Indeed, it is undisputed that the policy ultimately paid out nearly $1.5 million to the receivership estate.

Nevertheless, in the district court's view, the benefit of the E&O policy could not be attributed to Mistina because the court could not "find that it was Mistina's deposit alone that paid the insurance premium." But the court did not offer any legal grounds for that all-or-nothing standard. And as a matter of ordinary causation, the Receiver's own testimony confirmed that a "substantial portion" of Mistina's money was used to pay the insurance premium, even if a precise amount could not be determined, and that, "but for that money, the insurance premium . . . would not have been made." Because the Receiver confirmed that the policy would have lapsed "but for [Mistina's] money," we see no basis in the record for the court's finding that the E&O policy was not attributable—even if not fully so—to the funds Summit received from Mistina. See *Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1558 (11th Cir. 1995) ("This court will hold a finding of fact clearly erroneous if the record lacks substantial evidence to support it." (quotation marks omitted)).

In its response brief, the Receiver contends that Mistina's argument relies on "hindsight" and that the "issue whether a debtor received reasonably equivalent value must be evaluated as of the date of the transaction." The Receiver reasons that, "[a]bsent any knowledge of the Ponzi scheme, which she has repeatedly indicated she was not aware of, she would have no reason to believe

that the Receiver was receiving any benefit other than the receipt of the $30,000."

The Receiver's response is unpersuasive. Unrebutted evidence reflects that Mistina knew Summit was indirectly receiving the benefit of the E&O policy as a result of the exchange.[4] Mistina testified that Summit's CEO proposed the exchange for that express purpose, and that she paid the approximately $37,000 premium for the E&O policy out of Summit's account shortly after transferring $30,000 of her personal funds to Summit. The Receiver's testimony and the evidence presented at the hearing were consistent with her testimony.

For these reasons, we conclude that the district court clearly erred in finding that the E&O policy was not attributable, at least in substantial part, to Mistina's payment of $30,000 to Summit in exchange for the right to receive the four annual payments due under the Note. And the Receiver has not otherwise refuted Mistina's account of the exchange or shown that the E&O policy either should not be considered or did not provide reasonably equivalent value. *See In re Chase & Sanborn Corp.*, 904 F.2d at 593–94.

We therefore vacate the district court's September 9, 2021, order overruling Mistina's objection and approving the settlement

---

[4] The Receiver appears to be making an argument that Mistina would not have known that the Receiver could collect under the E&O policy when she made the transfer. That may be true, but it's not responsive to Mistina's argument that the policy itself was valuable to Summit.

agreement between the Receiver and Alexandria, and we remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**